THE STATE, EX REL. B.O.C. GROUP, GENERAL MOTORS CORPORATION, APPELLANT AND CROSS-APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO; NATALI, APPELLEE AND CROSS-APPELLANT.

[Cite as State, ex rel. B.O.C. Group, General Motors Corp., *v.* Indus. Comm. (1991), 58 Ohio St. 3d 199.]

(No. 89-1958—Submitted October 16, 1990—Decided April 3, 1991.)

200

*Green, Haines, Sgambati, Murphy & Macala Co., L.P.A., Dennis Haines, Barry Laine, Ronald E. Slipski* and *David A. Bobovnyik*, for appellee and cross-appellant.

*Per Curiam.* Two questions are directed at claimant's layoff: (1) Is the issue *res judicata* or moot? and (2) If not, does layoff bar compensation for temporary total disability here? We answer both inquiries in the negative and for the following reasons affirm the appellate court's judgment.

Prior to the period at issue, claimant received other compensation for temporary total disability related to the injury. Claimant asserts that because B.O.C. never raised the layoff issue then, it is barred by *res judicata* from doing so now. We disagree.

*Res judicata* operates "to preclude the relitigation of a point of law or fact that was at issue in a former action between the same parties and was passed upon by a court of competent jurisdiction." *Consumers' Counsel* v. *Pub. Util. Comm.* (1985), 16 Ohio St. 3d 9, 10, 16 OBR 361, 362, 475 N.E. 2d 782, 783. It applies "not only to defenses which were considered and determined but also to those defenses which could properly have been considered and determined." *State, ex rel. Moore,* v. *Indus. Comm.* (1943), 141 Ohio St. 241, 25 O.O. 362, 47 N.E. 2d 767, paragraph two of the syllabus; *Rogers* v. *Whitehall* (1986), 25 Ohio St. 3d 67, 25 OBR 89, 494 N.E. 2d 1387.

The principle applies to administrative proceedings. *Set Products, Inc.* v. *Bainbridge Twp. Bd. of Zoning Appeals* (1987), 31 Ohio St. 3d 260, 31 OBR 463, 510 N.E. 2d 373. However, because of the commission's continuing jurisdiction under R.C. 4123.52, "the defense of *res judicata* has only a limited application to compensation cases." *Cramer* v. *Indus. Comm.*

*Baughman & Associates Co., L.P.A., Leonard J. Pappas* and *James A. Neff,* for appellant and cross-appellee.

(1944), 144 Ohio St. 135, 138, 29 O.O. 176, 177, 57 N.E. 2d 233, 234.

*Res judicata* requires "an identity of parties and issues in the proceedings." *Beatrice Foods Co.* v. *Lindley* (1982), 70 Ohio St. 2d 29, 35, 24 O.O. 3d 68, 71, 434 N.E. 2d 727, 731. In *Beatrice*, a 1959 tax audit resulted in a use tax assessment against rentals paid by plaintiff to a leasing agent. A 1963 Tax Commissioner order later deleted this tax.

Plaintiff was again audited in 1972, resulting in a similar tax assessment in 1976. This tax assessment was not vacated. On appeal, plaintiff argued that the 1963 decision of the commissioner barred, under *res judicata*, the 1976 assessment. We disagreed, finding the doctrine of *res judicata* inapplicable because:

"At issue in the case at bar is a separate assessment based on an entirely different audit period, and we find that the requisite identity of issues is not present." *Id.*

B.O.C. urges a similar result here, asserting that the issue of claimant's earlier compensation for temporary total disability was an issue distinct from her current request. Its point is well-taken. As stated in 3 Larson, Workers' Compensation Law (1989) 15-426,272(99) to 15-426,272(100), Section 79.72(f):

"It is almost too obvious for comment that res judicata does not apply if the issue is claimant's physical condition or degree of disability at two entirely different times * * *. A moment's reflection would reveal that otherwise there would be no such thing as reopening for change in condition. The same would be true of any situation in which the facts are altered by a change in the time frame * * *."

Claimant also argues that the layoff issue has been mooted by her subsequent reinstatement by B.O.C. during this appeal. We again disagree. While her grievance and eventual reinstatement may ultimately bear on the question of whether claimant had abandoned her employment, it does not negate the layoff as a factor preventing work, unrelated to the accident, during the claimed period of disability.

Having addressed these preliminary matters, we now analyze the significance of claimant's layoff. The effect of employment termination on future temporary total disability compensation was initially discussed in *State, ex rel. Jones & Laughlin Steel Corp.*, v. *Indus. Comm.* (1985), 29 Ohio App. 3d 145, 29 OBR 162, 504 N.E. 2d 451. In reviewing a retired claimant's request for compensation for temporary total disability, the appellate court stressed that a temporary total disability is one which must *prevent* a return to the former position of employment, under *State, ex rel. Ramirez*, v. *Indus. Comm.* (1982), 69 Ohio St. 2d 630, 23 O.O. 3d 518, 433 N.E. 2d 586. The court stated:

"* * * [T]he industrial injury must not only be such as to render the claimant unable to perform the functions of his former position of employment, but it must also prevent him from returning to that position." *State, ex rel. Jones & Laughlin Steel Corp.*, *supra*, at 146-147, 29 OBR at 163, 504 N.E. 2d at 453.

Accordingly, it held:
"* * * A worker is prevented by an industrial injury from returning to his former position of employment where, but for the industrial injury, he would return to such former position of employment. However, where the employee has taken action that would preclude his returning to his former position of employment, even if he were able to do so, he is not entitled to continued temporary total disability

benefits since it is his own action, rather than the industrial injury, which prevents his returning to such former position of employment. Such action would include such situations as the acceptance of another position as well as voluntary retirement." *Id.* at 147, 29 OBR at 164, 504 N.E. 2d at 454.

*Jones & Laughlin's* prohibition against temporary total disability compensation to claimants who voluntarily leave their jobs was adopted in *State, ex rel. Rockwell Internatl.*, v. *Indus. Comm.* (1988), 40 Ohio St. 3d 44, 531 N.E. 2d 678. *Rockwell* examined the eligibility for temporary total disability compensation of a claimant who retired after his industrial injury forced him from his job. In upholding continued eligibility, we recognized that construing "voluntary" retirement literally would preclude compensation whenever the decision to retire was made by the employee, even if the retirement was related to the injury. An entire class of claimants, including those who would not have retired but for their injury, would therefore be automatically disqualified from temporary total disability compensation. Finding such a result unacceptable, we ordered the commission to thenceforth consider whether retirement was injury-related. If it was, the retirement was deemed involuntary and the claimant's eligibility for future temporary total compensation was preserved.

Relying on *Rockwell*, B.O.C. asserts that temporary total disability compensation is improper since claimant's departure was not injury-related. This is incorrect. An employer-initiated departure is still considered involuntary as a general rule. *Rockwell* did not narrow the definition of "involuntary," it expanded it. While certain language in *Rockwell* may be unclear, its holding is not. The lack of a causal connection between termination and injury has no bearing where the employer has laid off the claimant.

The foregoing discussion, however, assumes that before even proceeding to the layoff issue, "some evidence" of an inability to return to the former position of employment exists. Absent such medical evidence, it is unnecessary to reach the layoff question. In the case at bar, we are prevented from answering this preliminary question.

Evidentiary review is confined to the evidence on which the commission, in its order, stated that it relied. *State, ex rel. Burley*, v. *Coil Packing, Inc.* (1987), 31 Ohio St. 3d 18, 31 OBR 70, 508 N.E. 2d 936; *State, ex rel. General American Transp. Corp.*, v. *Indus. Comm.* (1990), 49 Ohio St. 3d 91, 551 N.E. 2d 155. Here, the order improperly listed the evidence *considered* instead of only that on which it relied. The evidence, moreover, conflicts. While Dr. Urban and Dr. Novosel found that the allowed conditions barred claimant's return to her former position, Dr. Dominic disagreed. Dr. Brodell did not specifically address claimant's ability to work, but found nothing wrong with her.

In *General American Transportation* after reviewing a similar order of the commission, we ordered the commission to specify the evidence relied on, reasoning:

"* * * [O]ur review is limited to that evidence specifically *relied* on by the commission. * * * Under *Mitchell*, the commission must 'specifically state which evidence and only that evidence which has been relied upon to reach [its] conclusion * * *.' *Id.* at 483-484, 6 OBR at 534, 453 N.E. 2d at 724. Here, the commission appears to have listed all the evidence *considered,* instead of narrowing its citation to the evidence on which it relied. This conclusion is suggested by the order's language and

by simple logic—the commission could not have relied on both Dr. Sparks and Dr. Urban in concluding that claimant was temporarily and totally disabled due to the allowed conditions. It is thus unclear which doctors' reports were properly before us." (Emphasis *sic*.) *Id.* at 92, 551 N.E. 2d at 157.

We thus find that further review is impossible absent a clear statement of the evidence on which the commission *relied.* For this reason, the appellate judgment is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, DOUGLAS, H. BROWN and RESNICK, JJ., concur.

WRIGHT, J., concurs in judgment only.

HOLMES, J., dissents.

HOLMES, J., dissenting. I concur in the majority's treatment of the issues of *res judicata* and mootness, but respectfully dissent from its analysis and application of *State, ex rel. Ramirez,* v. *Indus. Comm.* (1982), 69 Ohio St. 2d 630, 23 O.O. 3d 518, 433 N.E. 2d 586; *State, ex rel. Jones & Laughlin Steel Corp.,* v. *Indus. Comm.* (1985), 29 Ohio App. 3d 145, 29 OBR 162, 504 N.E. 2d 451; and *State, ex rel. Rockwell Internatl.,* v. *Indus. Comm.* (1988), 40 Ohio St. 3d 44, 531 N.E. 2d 678.

The key issue in this case is whether the claimant, Sandra K. Natali, could receive temporary total disability compensation after being laid off for reasons *unrelated* to her injury. In discussing what is temporary total disability, this court in *Ramirez* held: "Under R.C. 4123.56, temporary total disability is defined as a disability which prevents a worker from return-

ing to his former position of employment." *Id.* at syllabus. Thus, *Ramirez* sets forth the proposition that the claimed disability must prevent a return to the former position of employment. However, this court did not discuss the claimant's right to temporary total disability in the situation where his or her former position no longer exists due to a layoff by the employer.

In relying on *Ramirez,* the Court of Appeals for Franklin County in *Jones & Laughlin, supra,* addressed a situation where a claimant receiving temporary total disability voluntarily retired, and held that the claimant could not continue to receive benefits under these circumstances. The court reasoned:

"* * * [A] worker is prevented by an industrial injury from returning to his former position of employment where, but for the industrial injury, he would return to such former position of employment. However, where the employee has taken action that would preclude his returning to his former position of employment, even if he were able to do so, he is not entitled to continued temporary total disability benefits since it is his own action, rather than the industrial injury, which prevents his returning to such former position of employment. Such action would include such situations as the acceptance of another position as well as voluntary retirement." *Id.* at 147, 29 OBR at 164, 504 N.E. 2d at 454.

But, in *Rockwell Internatl., supra,* this court expanded *Jones & Laughlin's* prohibition against temporary total disability compensation to claimants who voluntarily leave their jobs by holding that when such "* * * a claimant's retirement is causally related to an industrial injury, the retirement is not 'voluntary' so as to preclude eligibility for temporary total

disability compensation." *Id.* at syllabus; see, also, *State, ex rel. Ashcraft,* v. *Indus. Comm.* (1987), 34 Ohio St. 3d 42, 44, 517 N.E. 2d 533, 535 (the crux of *Jones & Laughlin* is a "* * * recognition of the two-part test to determine whether an injury qualified for temporary total disability compensation. The first part of this test focuses upon the disabling aspects of the injury, whereas the latter part determines if there are any factors, other than the injury, which would prevent the claimant from returning to his former position. The secondary consideration is a reflection of the underlying purpose of temporary total compensation: to compensate an injured employee for the loss of earnings, which he incurs while the injury heals."). *Rockwell Internatl.* provided a reasoned approach for determining whether a claimant's temporary total disability compensation should initiate or continue, by noting:

"Our view is accurately reflected in *State, ex rel. Dalton,* v. *Indus. Comm.* (April 7, 1987), Franklin App. No. 85AP-1025, unreported, which held:

" 'A disability determination does not hinge on the resolution of whether a claimant resigned or was involuntarily removed from her position. Instead, the determination rests on whether the fact that relator left her employment was causally connected to her injury. * * * Accordingly, where * * * the Industrial Commission determines that a claimant has not left a former position of employment due to a work-related injury, it may properly deny an award of temporary total disability.' * * *

"This broader focus takes into consideration a claimant's physical condition. It recognizes the inevitability that some claimants will never be medically able to return to their former positions of employment, and thus dispenses with the necessity of a claimant's remaining on the company roster in order to maintain temporary total benefit eligibility." *Id.* at 46, 531 N.E. 2d at 680-681.

Under the foregoing analysis, the sum of the case law with respect to the eligibility of a claimant to receive temporary total disability compensation indicates that the claimant must not be able to return to his or her former position. However, what if the claimant's position no longer exists? None of the case law addressed in the majority opinion considers this situation. Instead, the majority relies on *Rockwell* and erroneously states that any employer-initiated departure is still considered involuntary as a general rule. *Rockwell* specifically states to the contrary that " '[a] disability determination does *not* hinge on the resolution of whether a claimant resigned or was *involuntarily removed* from her position.' " (Emphasis added.) *Id.* at 46, 531 N.E. 2d at 680. To confuse the issue even more, the majority out of nowhere states: "The lack of a causal connection between termination and injury has no bearing where the employer has laid off the claimant." Again, the majority ignores the express language of *Rockwell* which provides that " '* * * the determination rests on whether the fact that * * * [the claimant] left her employment was causally connected to her injury.' " *Id.*

In reviewing the arguments in the case *sub judice,* both the employer's and the claimant's positions are untenable. B.O.C. asserts that temporary total compensation is always improper unless the claimant's departure is injury-related. Under this theory, the only involuntary departee entitled to temporary total compensation is one whose termination was due to injury. R.C. 4123.90, however, presumably circumvents this result by prohibiting

employers from engaging in such action in retaliation for making a benefits claim. Thus, some claimants conceivably are laid off for reasons that are facially unrelated to injury. These claimants, who would have continued working but for their employer's actions, would, pursuant to B.O.C.'s position, be precluded from temporary total compensation for any subsequent disability. The statute militates against the acceptance of B.O.C.'s argument.

The claimant asserts that the only criterion that exists for defining "voluntariness" or "involuntariness" is whether the claimant freely initiated the departure from her employment. If the answer is "no," claimant contends that the departure is involuntary *per se*. This position ignores *Jones & Laughlin, supra. Jones & Laughlin* did not narrowly declare that only those claimants who freely left were ineligible for temporary total compensation. Instead, it expansively barred temporary total compensation to a claimant who "has taken *action* that would preclude his [or her] returning to his [or her] former position of employment, even if he [or she] were able to do so * * *." (Emphasis added.) *Id.* at 147, 29 OBR at 164, 504 N.E. 2d at 454. Relevant claimant "action" encompasses a greater range of activity than the single precipitating act claimant advances in this case. See *Ashcraft, supra* (claimant's employment did not end at his request: it ceased upon his imprisonment. While incarcerated, claimant unsuccessfully sought temporary total compensation and eventually this court found he voluntarily departed).

Under *Ashcraft, supra,* a review of the character of departure is not restricted to the "initiation" phase of departure. It thus follows that the seemingly involuntary departure of a laid-off claimant may actually be voluntary if the employee, by words or acts, evinces an intent never to return to the former position of employment, even if recalled. It is thus imperative that the commission examine *all* of the claimant's actions, not just those preceding departure.

Furthermore, post-layoff employment secured by the claimant may, but does not necessarily, demonstrate an intent to abandon the former job held by the claimant. Obviously, a laid-off claimant who is awaiting recall should not be forced to forgo other employment in order to preserve temporary total compensation eligibility. However, an employee who has relocated to pursue other work may have abandoned his or her former job. Thus, a laid-off claimant should not automatically be classified an involuntary departee. Resolution of this query should be made by the commission on a case-by-case basis.

Accordingly, for the foregoing reasons, I would return this case to the Industrial Commission for consideration of the standards set forth within this dissent and for a commission order complying with the dictates of *State, ex rel. General American Transp. Corp.,* v. *Indus. Comm.* (1990), 49 Ohio St. 3d 91, 93, 551 N.E. 2d 155, 157.