DECISION
Relator, Virginia Jones, has filed this original action in mandamus requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying her motion for compensation for the total loss of use of her right index finger pursuant to former R.C. 4123.57(C), and to enter a new order granting said compensation.
This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded that this court should deny the requested writ.
Relator filed an objection to the decision of the magistrate contesting the magistrate's conclusion that res judicata precluded a reconsideration of the commission's prior denial of compensation for the total loss of use of the right finger absent evidence of a change of condition or evidence of new or changed circumstances subsequent to that earlier denial. For the reasons adequately stated in the decision of the magistrate, the objection is overruled.
Following independent review, pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained in it. In accordance with the decision of the magistrate, the requested writ is denied.
Objection overruled; writ of mandamus denied.
BROWN and HARSHA, JJ., concur.
HARSHA, J., of the Fourth Appellate District, sitting by assignment in the Tenth Appellate District.
 APPENDIX A IN MANDAMUS
In this original action, relator, Virginia Jones, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its January 21, 1999 order denying her January 2, 1998 motion for former R.C. 4123.57(C) compensation for the total loss of use of her right index finger, and to enter an order granting said compensation.
Findings of Fact:
1. Relator has an occupational disease claim which is allowed for: "post traumatic degenerative PIP joint right index finger; aggravation of pre-existing degenerative arthritis of left middle finger," and is assigned claim number OD25738-22. The commission recognizes November 1, 1985 as the date of disability for the claim. The allowed conditions of the claim arose out of relator's employment with respondent General Motors Corporation ("General Motors"), a self-insured employer under Ohio's workers' compensation laws.
2. On December 13, 1988, relator moved for compensation under former R.C. 4123.57(C) "for loss of use of the right index finger" in accordance with the August 25, 1988 report of E. Gregory Fisher, M.D., and the October 8, 1997 report of Jose Luis Chavez, M.D.
3. The October 8, 1997 report of Dr. Chavez is based upon his July 29, 1997 examination of relator. Dr. Chavez's report states:
"COMPLAINTS: The claimant states that she had the first joint of the right index finger fused because of significant deformity and deviation of the distal finger. * * *
"EXAMINATION: * * * Inspection of the right index finger indicates some degree of deformity. The finger from the PIP joint distally presents some degree of ulnar deviation. This finger has been fused at the PIP joint in a 35 degree angle position. She has a well healed scar at the dorsal aspect of this finger that measures 2" long and is not hypertrophic. * * *"
4. Dr. Fisher examined relator on behalf of General Motors. His August 25, 1988 report states:
"* * * She gives a history of having problems with the PIP joint of the right index finger approximately three years prior to 1986 when she began having swelling and pain and stiffness over the PIP joint of the index finger. During this period of time, she continued to work on the assembly line using a drill gun and when using the drill gun, it caused the swelling and stiffness in the finger. She saw Dr. Peter Stern here in town, who eventually fused the PIP joint of the finger in a mildly flexed position in April of 1986 with a very nice result. * * *
"* * * The PIP joint of the right index finger is flexed about 45 degrees. There is no passive or active motion in that joint. When she grips and uses her right hand, she basically uses the thumb and long finger as a pinching mechanism. She really doesn't use the index finger. * * *"
5. Following a May 10, 1989 hearing, a district hearing officer ("DHO") issued an order stating:
"The hearing officer finds that as a result of the occupational disease injury of 11-1-85 claimant has suffered a 1/3 loss of the right index finger due to ankylosis.
"Therefore, compensation is to be paid pursuant to Ohio Revised Code Section 4123.57(C) for 1/3 loss of the right index finger due to ankylosis.
"Payment of compensation is to begin on 4-19-86, the date of the surgical fusion.
"Based on medical report of Dr. Fisher."
6. The May 10, 1989 DHO's order was not administratively appealed.
7. On August 30, 1994, relator moved as follows:
"* * * [T]hat the claimant be awarded benefits for total loss of use of right index finger, due to ankylosis at the PIP joint of the right index finger, pursuant to Section 4123.57(C). Please note, the claimant was already awarded one-third loss of use of right index finger by DHO order of 5/10/99."
8. In support of the motion, relator cited to the August 25, 1988 report of Dr. Fisher and commission Memo No. F.4, dated January 1, 1989, which states:
"The claimant is entitled to an award for total loss of use of a finger when it is found that the claimant suffers ankylosis of the proximal interphalangeal (PIP) joint of a finger. In other words, ankylosis of the joint below the middle phalange is a loss of more than the middle and distal phalanges of the finger."
Memo No. F.4 indicates that it is based upon an unreported decision from this court, State ex rel. Glower v. Indus. Comm. (1988), Franklin App. No. 86AP-1026.
9. Following a January 11, 1995 hearing, a DHO issued an order denying relator's August 30, 1994 motion. The DHO's order states:
"The District Hearing Officer finds that the claimant has not incurred the total loss of use of the right index finger.
"The District Hearing Officer finds that the claimant was previously granted an award for 1/3 loss of use of the right index finger by District Hearing Officer order dated 5-19-89.
"This order is based on the reports of Dr. Fisher."
10. Relator administratively appealed the DHO's order of January 11, 1995. Following a March 23, 1995 hearing, an SHO issued an order that affirmed the DHO's order.
11. On June 8, 1995, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of March 23, 1995.
12. In 1996, relator filed in this court a mandamus action, which was assigned case number 96AP-1249. On August 5, 1996, this court issued its memorandum decision. On August 6, 1996, this court filed its journal entry of judgment. This court's judgment was premised upon the application of the doctrine of res judicata, as explained in this court's memorandum decision:
"* * * [T]he record does reveal that relator's motions, filed in 1988 and 1994, claiming additional compensation for total loss of use of the right index finger are identical insofar as the relief requested. And significantly, the medical evidence submitted in support of the motions is identical. There is therefore an identity of the parties involved in consideration of both motions and the issue being the same, especially from the standpoint of there being a dependence upon the same medical evidence, the doctrine of res judicata does apply under the circumstances in this case. For this reason, the objections raised by relator will be overruled. An additional objection submitted by relator seems to claim that in view of the earlier decision awarding only a one-third loss of the right index finger, due to ankylosis, that the commission did not consider the balance of the other two-thirds of an award that would otherwise be subject to consideration. However, the earlier motion sought an award for the loss of use of the finger and the fact that the earlier decision allowed one-third loss of the finger obviously implies that the commission did not find the medical evidence supported the motion founded on Dr. Fisher's report. The medical evidence being the same as previously considered by the commission, there is an obvious duty to reject the same contention upon a further consideration. * * *"
13. Apparently, this court's judgment in case number 96AP-1249 was not appealed to the Supreme Court of Ohio.
14. On February 12, 1998, relator was again examined by Dr. Fisher on behalf of General Motors. Dr. Fisher reports:
"* * * I haven't seen Ms. Jones in the past ten years. During this time she has remained in retirement. She's had no treatment in regard to her hands since Dr. Stern operated on them back in 1987 and 1988. She has taken extra-strength Tylenol at times for pain. * * *
"* * * As far as the right index finger is concerned, clinically the PIP joint is fused at 40 degrees of flexion using a goniometer for the measurement. There is no motion whatsoever over the PIP joint of the right index finger and also there is no pain or discomfort over that joint. The joint is in the flexed position at 40 degrees. There is also motion over the metacarpo-phalangeal joint and distal IP joint of the right index finger as well. It measures out to be zero degrees of extension to 75 degrees of flexion at the metacarpophalangeal joint and from zero to 15 degrees at the distal IP joint of the right index finger. In essence, the finding on the right index finger is unchanged from my exam of ten years ago."
15. On December 9, 1997, relator was examined, at her own request, by chiropractor Peter J. Fagerland, D.C. Dr. Fagerland reported:
"PHYSICAL EXAMINATION: * * * Examination of the right finger reveals a well-healed scar on the dorsal aspect of the finger. There is no noticeable atrophy of the finger. There is a complete fusion of the right finger at the PIP joint at approximately 35 degrees. This results in a complete loss of use of that right finger. When the patient attempts to grip something with her right hand, she compensates for using her thumb and third, fourth and fifth fingers. The patient has difficulty making a fist due to the fusion. Reflexes were +2 bilaterally. Measurements of the upper extremities were bilaterally symmetrical. There was no noticeable movement of the right index finger. * * *
"* * *
"OPINION: Based on the allowed conditions and the AMA Guide to the Evaluation of Permanent Impairment, I find the following: Due to the fusion of her right finger, Mrs. Jones experiences a complete loss of that right index finger. * * *"
16. On January 2, 1998, citing only Dr. Fagerland's report, relator moved for former R.C. 4123.57(C) compensation for total loss of use of her right index finger.
17. Following a July 1, 1998 hearing, a DHO issued an order denying relator's motion. Relator administratively appealed.
18. Following an August 13, 1998 hearing, an SHO issued an order that affirmed the DHO's order but modified the explanation for the decision.
19. Relator administratively appealed the SHO's order of August 13, 1998, and the commission decided to hear the appeal. Following a January 21, 1999 hearing, the commission issued an order stating:
"* * * [I]t is the order of the Industrial Commission that the order of the Staff Hearing Officer, dated 08/13/98, is modified to the following extent. The claimant's C-86 motion requesting total loss of use of the right index finger, filed 01/08/98, is denied.
"It is the finding of the Industrial Commission that the issue of total loss of use of the right index finger is not res judicata. New evidence has been submitted since the District Hearing Officer and Staff Hearing Officer orders, dated 01/11/95 and 03/23/95 respectively, in the form of the report from Dr. Fagerland dated 12/15/97. This report presents evidence which could constitute new and changed circumstances.
"It is the order of the Industrial Commission that the request for a total loss of use award for the right index finger is denied. After considering the reports of Dr. Fagerland (12/15/97) and Dr. Fisher (02/12/98), the Industrial Commission finds the report of Dr. Fisher to be the more persuasive report. Dr. Fisher examined the claimant previously on 08/25/88, and the claimant was subsequently awarded 1/3 loss of use of the right index finger, per District Hearing Officer order dated 05/10/89. The claimant then requested a total loss of use award on 8/30/94. This request was denied by a District Hearing Officer on 01/11/95 and a Staff Hearing Officer on 03/23/95. Per Dr. Fisher's new report dated 02/12/98, the findings on the claimant's right index finger remain unchanged from the exam of ten years ago. The claimant's right index finger is fused at the PIP joint, but this condition has not changed since the last hearings regarding loss of use in 1989 and 1995. For these reasons, the requested award pursuant to O.R.C. Section 4123.57(B) is denied.
"This order is based upon the reports of Dr. Fisher dated 08/25/88 and 02/12/98."
20. On December 24, 2001, relator, Virginia Jones, filed this mandamus action.
Conclusions of Law:
It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
Res judicata operates to preclude the relitigation of a point of law or fact that was at issue in a former action between the same parties and was passed upon by a court of competent jurisdiction. State ex rel. B.O.C. Group, General Motors Corp. v. Indus. Comm. (1991),58 Ohio St.3d 199, 200. The principle applies to administrative proceedings. Id. However, because of the commission's continuing jurisdiction under R.C. 4123.52, the defense of res judicata has only limited application to compensation cases. Id. The B.O.C., Group court stated:
"* * * As stated in 3 Larson, Workers' Compensation Law (1989) 15-426,272(99) to 15-426,272(100), Section 79.72(f):
" `It is almost too obvious for comment that res judicata does not apply if the issue is claimant's physical condition or degree of disability at two entirely different times * * *. A moment's reflection would reveal that otherwise there would be no such thing as reopening for change in condition. The same would be true of any situation in which the facts are altered by a change in the time frame * * *.' " (Id. at 201.)
The commission's order of January 21, 1999 indicates that the commission correctly understood the limited applicability of res judicata to the commission's prior denial of compensation for total loss of use of the right index finger. The commission understood that evidence of a change of condition or evidence of "new and changed circumstances" occurring subsequent to the commission's prior denial of compensation on March 23, 1995 (SHO's hearing date), could potentially overcome the res judicata effect of the commission's prior determination.
The commission reviewed two reports from Dr. Fisher — one dated August 25, 1988 and the other February 12, 1998. The August 25, 1988 report had been submitted to the commission in support of relator's August 30, 1994 motion that was denied. The February 12, 1998 report was submitted in support of relator's January 2, 1998 motion. The commission correctly observed that Dr. Fisher's February 12, 1998 report clearly indicates that the findings regarding the right index finger remained unchanged from the examination ten years earlier. Thus, Dr. Fisher's report of February 12, 1998 presents no evidence of a change of condition or new and changed circumstances occurring subsequent to the commission's prior denial of compensation that could overcome the res judicata effect of the commission's prior determination. Fusion of the PIP joint of the right index finger was the sole medical basis for relator's August 30, 1984 motion as well as relator's January 2, 1998 motion.
The commission also reviewed Dr. Fagerland's report of December 15, 1997. While Dr. Fagerland was indeed a new doctor filing a new report in the claim, his report presents no medical findings showing a change of condition subsequent to the prior commission determination that could support total loss of use of the finger. Dr. Fagerland did offer the following opinion: "Due to the fusion of her right finger, Mrs. Jones experiences a complete loss of that right index finger."
Dr. Fagerland's opinion that "Mrs. Jones experiences a complete loss of that right index finger" is not medical evidence of a change of condition or new and changed circumstances even though, apparently, no doctor had previously ventured an opinion that the fusion of the PIP joint constitutes total loss of the finger. Dr. Fagerland's opinion of total loss of the finger due to the PIP joint fusion is in actuality a legal opinion based upon this court's decision in Glower. The medical basis for Dr. Fagerland's opinion of a total loss of use — the PIP joint fusion — is the same medical basis that was before the commission at the prior determination. Dr. Fagerland's legal opinion, presumably based upon Glower, does not constitute medical evidence of a change of condition subsequent to the commission's prior determination that could overcome the res judicata effect of the prior determination.
Given the above analysis, the magistrate disagrees with that portion of the commission's January 21, 1999 order stating that Dr. Fagerland's report "presents evidence which could constitute new and changed circumstances." Clearly, Dr. Fagerland's report cannot constitute evidence of new and changed circumstances occurring subsequent to the commission's prior determination. As previously noted, Dr. Fagerland's willingness to venture a legal conclusion based upon Glower and the same medical findings previously before the commission cannot constitute evidence to overcome the res judicata effect of the commission's prior determination.
While the commission found in its January 21, 1999 order that Dr. Fisher's February 12, 1998 report was a "more persuasive report" than Dr. Fagerland's, the comparative persuasiveness of the two reports was not truly an issue in the claim because Dr. Fagerland's legal conclusion that PIP joint fusion constitutes total finger loss is not evidence of a change of condition occurring subsequent to the commission's prior determination. That is to say, even if Dr. Fagerland's medical findings are entirely credible and given full weight, there is simply no medical evidence presented of a change of condition of the finger that can support compensation for total loss of use.
Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.