IN MANDAMUS ON OBJECTION TO MAGISTRATE'S DECISION DECISION
{¶ 1} Relator, Dianna Rowe, has filed this original action in mandamus requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying her application for permanent total disability compensation and to enter an amended order that eliminates the finding that she is able to return to her former position of employment and that redetermines her application based upon consideration of the nonmedical disability factors.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded that relator failed to demonstrate that the commission had abused its discretion in its determination.
 {¶ 3} Relator filed an objection to the decision of the magistrate continuing to argue that the law as enunciated by the Ohio Supreme Court in State ex rel. Belknap v. Buehler's FoodMarkets, Inc. (1998), 84 Ohio St.3d 108, 109, compelled a contrary result. However, as the magistrate explained in his decision, relator misinterprets Belknap. For the reasons adequately articulated in the decision of the magistrate, the objection is overruled.
 {¶ 4} Following independent review, pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained in it. In accordance with the decision of the magistrate, the requested writ is denied.
Objection overruled; writ denied.
Klatt and Sadler, JJ., concur.
 {¶ 5} In this original action, relator, Dianna Rowe, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her application for permanent total disability ("PTD") compensation and to enter an amended order that eliminates the finding that she can return to her former position of employment and that redetermines the PTD application based upon consideration of the nonmedical disability factors.
 Findings of Fact {¶ 6} 1. Relator has two industrial claims that arose out of her employment as a sewing machine operator with respondent Wilson Sporting Goods Company, a state-fund employer. Her October 13, 1981 injury is allowed for: "muscle strain forearm, right; right pronator tares syndrome; right carpal tunnel syndrome," and is assigned claim number 81-27198. Her March 1, 1986 injury is allowed for: "cervical radiculopathy; displaced cervical disc C5-6; foraminal stenosis C5-6, C6-7," and is assigned claim number OD190445.
 {¶ 7} 2. Following an August 14, 1997 hearing before a staff hearing officer ("SHO"), the commission awarded relator impairment of earning capacity ("IEC") compensation under former R.C. 4123.57(A). The commission found that relator's pre-injury earning capacity was $249.65 based upon the average weekly wage ("AWW"). The commission further found that relator's post-injury earning capacity is $100 per week and that relator remains "capable of part-time minimum [wage] unskilled work." The IEC award was based upon a vocational report from Mr. Kilcher and a medical report from Dr. Peoples.
 {¶ 8} 3. On March 23, 2001, relator filed an application for PTD compensation.
 {¶ 9} 4. On June 26, 2001, relator was examined at the commission's request by physiatrist Timothy J. Fallon, M.D. Dr. Fallon examined relator for all the allowed conditions of the two industrial claims. Dr. Fallon wrote:
 {¶ 10} This woman's allowed conditions are ones which are stabilized and MMI. They would not appear at this time of sufficient severity that they would preclude her from continuing in the type of work activity which she described to me. * * *
 {¶ 11} 5. Dr. Fallon also completed a physical strength rating form on which he indicated that relator is capable of physical work activity in the "light work" classification.
 {¶ 12} 6. The commission also requested an employability assessment report from William T. Darling. Darling filed his vocational report on or about September 25, 2001.
 {¶ 13} 7. Following a November 7, 2001 hearing, an SHO issued an order denying relator's PTD application. The SHO's order states:
 {¶ 14} * * * This Order is based particularly upon the reports of the physician identified in the body of this Order.
 {¶ 15} The claimant is a 53-year[-old] woman whose date of birth is 8/30/47. The claimant last worked in any capacity 1/27/86. The claimant has a 10th grade education, but did complete her G.E.D. in 1987. The claimant also attended technical classes and computer training and bookkeeping. The claimant testified at hearing that she attended these classes in the late 1980's, but did not complete the requirements for any type of certificate or degree. It is significant to note that the claimant completed her G.E.D. after her last industrial injury, and in fact, after her last date of employment. This certainly indicates to the Staff Hearing Officer that the claimant has some ability to be retrained and certainly has some useful academic skills. The claimant worked her entire life from 1966 through 1986 as a Singer/Purtain/lacer sewer. She performed these tasks for Wilson Sporting Goods, and the jobs included things such as sewing lining to leather football panels. The claimant also put laces in footballs and performed some other types of work activities related to sewing for Wilson.
 {¶ 16} The claimant has been receiving Social Security Disability Insurance Benefits since April of 1988.
 {¶ 17} The claimant testified at hearing regarding many impairments in day-to-day living and functioning. The claimant testified regarding consistent pain complaints particularly in her neck, but also in her right dominant upper extremity. However, this Staff Hearing Officer finds that the preponderance of the medical evidence on file does not support the claimant's testimony regarding the subjective pain complaints. In fact, the claimant was evaluated on 6/26/2001 by Timothy J. Fallon, M.D., a physiatrist. Doctor Fallon took a full and complete history of the claimant, reviewed medical evidence on file, and performed a physical examination. As a result of the above, Doctor Fallon specifically finds "This woman's allowed conditions are ones which are stabilized and MMI. They would not appear at this time of sufficient severity that they would preclude her from continuing in the type of work activity which she described to me." As a result, Doctor Fallon finds that the claimant could return to her former position of employment or similar types of employment.
 {¶ 18} This Staff Hearing Officer also finds that, pursuant to Speelman [State ex rel. Speelman v. Indus. Comm. (1992),73 Ohio App.3d 757] and Bowling v. Natl. Can Corporation
[State ex rel. Bowling v. Natl. Can Corp. (1996),77 Ohio St.3d 148] cases, there is no evidence on file that the claimant has made any attempt to perform any lighter duty activity or participate in any type of vocational retraining with a goal of re-entry into the work-force since the late 1980's or early 1990's. The claimant did obtain her G.E.D. and did attempt to take some computer and bookkeeping classes, however, she did not make any attempt, that is evidenced on file, to obtain work using any of those skills. A Supreme Court determined in Bowling v.National Can Corporation, the claimant has some duty to mitigate her employment status, and there is no evidence on file that any such attempt has been made.
 {¶ 19} This Staff Hearing Officer finds that, based upon the fact that Doctor Fallon has opined that the claimant could return to her former position of employment, no further consideration of the vocational factors is required.
 {¶ 20} Therefore, as a result of the physical findings in the report of Doctor Fallon, and the lack of any attempt to find other work within her restrictions, this Staff Hearing Officer finds that the claimant is not permanently and totally disabled nor precluded from performing sustained remunerative employment. In fact, the claimant could return to her former position of employment. Therefore, the claimant's IC-2 Application, filed 3/23/2001, is hereby DENIED. (Emphasis sic.)
 {¶ 21} 8. On February 26, 2003, relator, Dianna Rowe, filed this mandamus action.
 Conclusions of Law {¶ 22} Relator contends that the commission cannot find that the industrial injuries permit her to return to her former position of employment and, on that basis, deny the PTD application because she has been previously awarded IEC compensation. Relator contends that State ex rel. Belknap v.Buehler's Food Markets, Inc. (1998), 84 Ohio St.3d 108, compels this court to find that the 1997 award of IEC compensation precludes the commission from subsequently finding that her industrial injuries permit her to return to her former position of employment.
 {¶ 23} The magistrate finds that Belknap does not compel the result that relator seeks in this action. Accordingly, as more fully explained below, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 {¶ 24} In Belknap, the commission denied Elizabeth Belknap's PTD application in January 1994, based upon a report from Dr. Katz, finding Belknap capable of returning to her former position of employment. In March 1994, Belknap sought a determination of her permanent partial disability. In support, she submitted a report from Dr. Casiano that contained findings that were nearly identical to those in a 1992 report from Dr. Casiano.
 {¶ 25} Belknap requested IEC compensation pursuant to former R.C. 4123.57(A). A district hearing officer ("DHO"), citing the commission's previous determination that Belknap could return to her former position of employment, found no impairment of her capacity. An SHO affirmed, adding that there was no probative medical evidence of a worsening of Belknap's condition subsequent to denial of the PTD application. Belknap filed a mandamus action in this court to challenge the denial of IEC compensation. This court denied the writ.
 {¶ 26} Belknap appealed to the Supreme Court of Ohio. Affirming this court's judgment, the Supreme Court explained:
 {¶ 27} * * * No one disputes claimant's assertion that her former position of employment represents her maximum pre-injury earning capacity. That being the case, if claimant's industrial injury does not prevent her from returning to that job, there has been no impairment of earning capacity. Upon review, we find that there is "some evidence" supporting the com-mission's conclusion that claimant can return to her former position of employment.
 {¶ 28} On January 26, 1994, claimant was found capable of resuming her former duties. Claimant did not contest that decision. There is no evidence that claimant's condition has worsened since that time. To the contrary, Dr. Nicholas Varrati examined claimant after the permanent total disability denial, and elicited no objective findings as to the allowed conditions. Perhaps most important, Dr. Casiano — the only physician to examine claimant both before and after PTD was denied — issued a report after the PTD denial that clearly demonstrated that claimant's condition had not changed. Id. at 109-110.
 {¶ 29} According to relator, under Belknap, the 1997 IEC award presumes an inability to return to the former position of employment. According to relator, "[i]t is impossible to reconcile" the IEC award with the commission's finding, in denying PTD compensation, that relator can return to her former position of employment. (Relator's brief at 11-12.)
 {¶ 30} Relator suggests that a presumed inability to return to the former position of employment attaching to the IEC award estoppes the commission from finding an ability to return to the former position of employment for any period of time subsequent to the IEC award. Relator invokes the doctrine of res judicata.
 {¶ 31} Clearly, even if a presumed inability to return to the former position of employment attaches to the IEC award, as relator asserts, the doctrine of res judicata does not preclude the commission from finding an ability to return to the former position of employment for a period subsequent to the IEC award.
 {¶ 32} Res judicata requires an identity of parties and issues in the proceedings. State ex rel. B.O.C. Group GeneralMotors Corp. v. Indus. Comm. (1991), 58 Ohio St.3d 199. It operates to preclude the relitigation of a point of law or fact that was at issue in a former action between the same parties and was passed upon by a court of competent jurisdiction. Id. The principle applies to administrative proceedings. Id.
 {¶ 33} However, in compensation cases where the issues claimed to be identical are set in different time frames, the doctrine may not be applicable. As the B.O.C. Group court noted:
 {¶ 34} * * * As stated in 3 Larson, Workers' Compensation Law (1989) 15-426,272(99) to 15-426,272(100), Section 79.72(f):
 {¶ 35} "It is almost too obvious for comment that res judicata does not apply if the issue is claimant's physical condition or degree of disability at two entirely different times * * *. A moment's reflection would reveal that otherwise there would be no such thing as reopening for change in condition. The same would be true of any situation in which the facts are altered by a change in the time frame * * *." Id. at 201.
 {¶ 36} In the instant case, relator sought PTD compensation some three and one-half years after the IEC award issued.
 {¶ 37} On June 26, 2001, almost four years after the IEC award issued, Dr. Fallon examined relator because of the filing of the PTD application. Obviously, Dr. Fallon was obligated to report his actual clinical findings. He reported his opinion that relator can return to her former position of employment. Nowhere in this action does relator directly challenge the evidentiary value of Dr. Fallon's report. Clearly, Dr. Fallon's report is some evidence upon which the commission can rely.
 {¶ 38} Relator seems to misread Belknap as a case in which the doctrines of res judicata or collateral estoppel attached to the denial of Belknap's PTD application such that future IEC compensation is precluded. Clearly, Belknap is not a case involving the application of the doctrines of res judicata or collateral estoppel. Belknap is quite simply a case in which the court found that the denial of IEC compensation was based upon some evidence, i.e., the prior finding that Belknap could return to her former position of employment. The Belknap court stressed, as did the commission, that there was no probative evidence that Belknap's condition had materially worsened subsequent to the denial of the PTD application. See State exrel. Roubal v. Indus. Comm. (Jan. 24, 2002), Franklin App. No. 01AP-595, affirmed 97 Ohio St.3d 196, 2002-Ohio-5784.
 {¶ 39} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.