[Cite as *Russell v. Austintown Twp. Zoning Inspector*, 2016-Ohio-8547.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| LEROY RUSSELL | ) | |
| | ) | |
| PLAINTIFF-APPELLANT | ) | |
| | ) | CASE NO. 14 MA 0182 |
| VS. | ) | |
| | ) | OPINION |
| AUSTINTOWN TOWNSHIP ZONING | ) | |
| INSPECTOR, DARREN CRIVELLI | ) | |
| | ) | |
| DEFENDANT-APPELLEE | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from the Court of Common
Pleas of Mahoning County, Ohio
Case No. 2012-CV-03625

JUDGMENT:                                        Affirmed.

APPEARANCES:
For Plaintiff-Appellant                       Attorney Bruce Broyles
5815 Market Street, Suite 2
Boardman, Ohio 44512

For Defendant-Appellant                   Attorney Tonya Rogers
400 South Main Street
North Canton, Ohio 44720

JUDGES:

Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated: December 29, 2016

DeGENARO, J.

{¶1} Plaintiff-Appellant, Leroy Russell, appeals the judgment of the Mahoning County Court of Common Pleas granting summary judgment in favor of Defendant-Appellee, Austintown Township Zoning Inspector, Darren Crivelli, in an action for declaratory judgment, injunctive relief and damages relating to a zoning dispute. On appeal, Russell asserts the trial court erred by ruling that his claims were barred by res judicata. For the following reasons, Russell's sole assignment of error is meritless. Accordingly, the judgment of the trial court is affirmed.

## Facts and Procedural History

{¶2} Russell is the owner of a 6.466 acre parcel of property in Austintown Township which is located in a district zoned under the Austintown Township Zoning Ordinance as Agricultural-Suburban-Estate-Residential, A-SER. He obtained the property via a transfer on death affidavit from his father, Harry Russell.

{¶3} Harry had many disputes over the years with the Township regarding his use of the property. Pursuant to an administrative search warrant issued August 18, 1989, numerous items were found on the property to be in violation of zoning regulations. Soon thereafter, Harry was charged with storing abandoned vehicles on the property, pursuant to R.C. 519.24 in *State of Ohio v. Harry Russell*, Case No. 89-CR-802, Mahoning County Court No. 4. A trial was held on the complaint, and the charges were dismissed, after the trial court found that the "junk" on the property was being used, the "eyesore" was not visible from the road, and there was "no visible complainant."

{¶4} Then, in 1994, in *State of Ohio v. Harry Russell*, Case No. 94 CR 300, Mahoning County Court No. 4, Harry was charged with violating Austintown Township Zoning Ordinance Article XVII, Section 1704, by:

> [E]stablishing, maintaining, and expanding an automobile graveyard and junk yard in the front, side, and rear yards of the subject 6.466 acre parcel, Tract 6 No 9, Austintown Township, located in a Residence R-1 and Agriculture A-SER District, namely, an accumulation of abandoned, wrecked, unused, and/or dismantled

automobiles, trucks, automobile and truck parts, and other junk items and materials; all of which is subject to and liable for penalties as prescribed in Section 519.99 of the Ohio Revised Code.

{¶5} After a hearing in March 1995, Harry was subsequently convicted of the charges in a July 1995 judgment entry that stated: "[T]his Court finds that the defendant violated article XVII §1704 of the Austintown Township Zoning Ordinance by maintaining an automobile graveyard and junkyard on the subject residential or agricultural property." A fine was imposed but the county court agreed to suspend most of it, on the condition that Harry would bring the property into compliance with the zoning ordinance. There is nothing in the entry to indicate that the defense of a nonconforming use was ever raised.

{¶6} Subsequently, Harry failed to comply with the July 1995 order and in the years that followed, the county court held repeated hearings and it was consistently determined that Harry continued to maintain the property in a manner that violated Article XVII, Section 1704 of the Zoning Ordinance, and the entire fine was reinstated. In October 1995, Harry filed a pro-se pleading which appears to be a motion to vacate the July 1995 judgment convicting him; again this failed to raise the nonconforming use defense. The trial court did not rule in this motion, effectively denying it.

{¶7} On July 28, 1998, following yet another hearing in which the county court determined that Harry was not in compliance, he submitted a hand-written document of "facts" he wished to have formally entered into the record. The document included the assertion that Harry's use of the property was "grandfathered in" as his parents and grandparents had used the property in the same manner since 1930.

{¶8} In 1999, after several more agreements and hearings, the county court found Harry in contempt and imposed a 30-day jail sentence. This determination was upheld on appeal in *State v. Russell*, 7th Dist. No. 99CA260, 2001-Ohio-3430. Harry was subsequently released from serving the jail sentence due to poor health, despite

the fact that the property was never brought into compliance with zoning regulations.

**{¶9}** In the meantime, while the state court litigation was proceeding, Harry filed a 42 U.S.C. 1983 action in federal court against the former township zoning inspector in 1999, which was voluntarily dismissed with prejudice, and which the federal court found to be frivolous.

**{¶10}** After Harry's death in July 2010, Russell continued to use the property in the same manner as his father. In March 2012, Crivelli received a zoning complaint alleging that Appellant Russell was maintaining a junkyard on his property. On March 28, 2012, Crivelli conducted an inspection of the property and determined that it was being maintained in a manner which violated Article XVII, Section 1704 of the Austintown Township Zoning Ordinance, specifically that: "(1) [n]umerous unlicensed, inoperable, and dismantled vehicles and trailers are stored in an exposed manner * * *; and [u]sed tires, wheels, exhaust pipes, scrap metal, auto parts, auto body parts, construction debris, discarded windows, and other miscellaneous items, junk, and debris are stored in an exposed manner * * *"  This finding was communicated to Russell by letter on April 11, 2012.

**{¶11}** The parties then entered into an agreement that Russell would bring his property in compliance of the zoning ordinance no later than August 15, 2012. However, Crivelli determined that Russell continued to violate the zoning ordinance, and communicated this by letter. In October 2012, the Austintown Township Board of Trustees passed a resolution under R.C. 505.871 and declared that two of the cars on Russell's property constituted a nuisance and would be removed per the statutory procedures. Crivelli met with Russell's counsel on November 28, 2012, and informed him that the township would continue to utilize its authority under R.C. 505.871 until the property was brought into compliance with the zoning ordinance.

**{¶12}** On November 30, 2012, Russell filed the instant complaint against Crivelli in common pleas court asserting that the Austintown Township Zoning Ordinance is unconstitutional, and that his use of the property as a junkyard is a lawful, preexisting nonconforming use. Count One sought declaratory judgment,

requesting a declaration of his rights under the Ohio Constitution, R.C. 519.19, and the Austintown Township Zoning Ordinance. Count Two was for injunctive relief, requesting the trial court to enjoin Crivelli from enforcing the Austintown Township Board of Trustees Resolution. Finally, in Count Three, Russell requested money damages.

{¶13} The trial court entered a temporary restraining order, restraining Crivelli from interfering with what Russell contended to be his lawful, nonconforming use of the property and to preserve the status quo. By agreement of the parties, the provisions of the TRO were extended for the pendency of the action.

{¶14} Crivelli filed a counterclaim asserting that Russell's claim of a nonconforming use was barred by res judicata. The counterclaim requested declaratory judgment to determine the rights of the parties with regard to the alleged nuisance created by Russell's maintenance of his property in violation of the Township Zoning Ordinance. The counterclaim further asserted the Township Board of Trustees' use of R.C. 505.871 to declare Russell's cars a nuisance was a lawful delegation of authority. Crivelli amended his counterclaim on August 5, 2014, with leave of court, and requested a permanent injunction against Russell pursuant to R.C. 519.24.

{¶15} Crivelli filed a motion for summary judgment regarding Russell's claims and his own counterclaims. The motion was supported by the pleadings and Crivelli's affidavit, attached to which were a number of exhibits, which included, inter alia, pleadings, docket entries and judgment entries from the 1994 case against his father, Harry, *State v. Russell,* Case No. 94-CR-300; and entries from the 1999 federal court suit that Harry had filed against the former township zoning inspector.

{¶16} Crivelli argued that Russell's claims were barred by res judicata, because the issue of whether Russell's activities on the property constitute a nonconforming use were addressed and decided in favor of the township in Case No. 94-CR-300. Crivelli also argued that the claim of nonconforming use does not extend to property deemed a nuisance and that Russell's constitutional arguments must fail

because he failed to bring suit against the proper party, i.e., the board of township trustees. And even assuming arguendo Russell had named the board of trustees; Crivelli asserted Russell's claims would fail because the board acted within its authority when it enacted a resolution declaring two of Russell's vehicles as junk vehicles and a public nuisance. Crivelli argued that claims for money damages were barred by statutory immunity. Finally, Crivelli asserted that pursuant to R.C. 519.24, he was entitled to a permanent injunction enjoining Russell from using his property in a manner that violated the zoning resolution.

{¶17} Russell filed a brief in opposition to summary judgment which was supported by: pleadings from the 1989 criminal case against Harry; the deposition of Michael Kurilla, Jr., the former Austintown Township Zoning Inspector, which was taken in the context of the 1999 federal case; and Russell's self-serving affidavit, in which he claims that his family's use of the property as a junkyard predated the enactment of the township zoning ordinances. Thus, among other things, Russell claimed that the 1994 criminal action involved the *expansion* of a nonconforming use—which was purportedly established during the 1989 case—and not whether a nonconforming use existed. Accordingly, he argued that his claims were not barred by res judicata.

{¶18} The trial court granted Crivelli's motion for summary judgment and granted a stay of execution of its judgment pending appeal.

## Summary Judgment/Res Judicata

{¶19} In his sole assignment of error, Russell asserts:

The trial court erred in granting summary judgment to Appellee when there were genuine issues of material fact still in dispute.

{¶20} An appellate court reviews a trial court's summary judgment decision de novo. *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, ¶ 5. A motion for summary judgment is properly granted if the court, viewing the evidence in a light most favorable to the party against whom the

motion is made, determines that: there are no genuine issues as to any material facts; the movant is entitled to judgment as a matter of law; and, the evidence is such that reasonable minds can come to but one conclusion and that conclusion is adverse to the opposing party. Civ.R. 56(C); *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 10. "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). The nonmoving party has the reciprocal burden of specificity and cannot rest on the mere allegations or denials in the pleadings. *Id.* at 293.

**{¶21}** On appeal, Russell asserts that the trial court erred by concluding his claims were barred by res judicata insofar as Russell's predecessor failed to raise the nonconforming use defense in the prior criminal proceeding. He does not challenge other aspects of the trial court's ruling.

**{¶22}** With regard to nonconforming uses, R.C. 519.19 provides:

> The lawful use of any dwelling, building, or structure and of any land or premises, as existing and lawful at the time of enactment of a zoning resolution or amendment thereto, may be continued, although such use does not conform with such resolution or amendment, but if any such nonconforming use is voluntarily discontinued for two years or more, any future use of said land shall be in conformity with sections 519.02 to 519.25, inclusive, of the Revised Code. The board of township trustees shall provide in any zoning resolution for the completion, restoration, reconstruction, extension, or substitution of nonconforming uses upon such reasonable terms as are set forth in the zoning resolution.

**{¶23}** The doctrine of res judicata encompasses both claim preclusion, which was historically called estoppel by judgment, and issue preclusion, traditionally

termed collateral estoppel. *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995).

**{¶24}** This case involves the issue preclusion prong of res judicata which requires: "(1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action." *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 84, quoting *Hapgood v. Warren*, 127 F.3d 490, 493 (6th Cir.1997) (construing *Grava*).

**{¶25}** Courts have applied res judicata where the first action was a criminal proceeding and the second a civil one, thus barring a civil plaintiff from asserting a claim or position that was or could have been litigated in the criminal proceeding. *See, e.g., Independence Excavating, Inc. v. City of Twinsburg,* 9th Dist. No. 20942, 2002-Ohio-4526.

**{¶26}** All of the requirements of res judicata appear to be met in this case. The 1994 criminal conviction was a valid judgment on the merits determining that Harry had violated Article XVII, Section 1704 of the zoning ordinance by maintaining an automobile graveyard and junkyard in the front, side, and rear yards of the property.

**{¶27}** The second element, privity, is also satisfied. A party is in privity with another if it has a mutual or successive interest in the same right of property. *See Statskey v. Staskey*, 7th Dist. No. 974E-69, 2000-Ohio-2635, at *7. Here, there is no dispute that Russell and his father Harry were in privity with one another; Russell obtained the property via a transfer on death affidavit from his father in 2010.

**{¶28}** With regard to the third element, it is undisputed that Harry failed to timely raise the nonconforming use defense during the 1994 criminal proceedings. The doctrine of res judicata applies "not only to defenses that were considered and determined but also to those defenses which could properly have been considered

and determined." *State ex rel. Zollner v. Indus. Comm.*, 66 Ohio St.3d 276, 278, 611 N.E.2d 830 (1993), quoting *State ex rel. B.O.C. Group, Gen. Motors Corp. v. Indus. Comm.*, 58 Ohio St.3d 199, 200, 569 N.E.2d 496 (1991) (Emphasis deleted).

**{¶29}** Finally, this action arises out of the same transaction or occurrence that formed the subject matter of the 1994 criminal action: Russell admits he is using the property in the same manner as his predecessor, which violates Article XVII, Section 1704 of the township zoning ordinance.

**{¶30}** This case is similar to *Independence Excavating*, *supra*. There, Independence Excavating was found guilty of violating a municipal zoning ordinance that barred mining without a conditional use permit. *Id.* at *18. Independence Excavating subsequently filed a declaratory judgment action against the city seeking a determination of its nonconforming use status and challenging the constitutionality of the city's zoning ordinance. *Id.* at *3, *17. The court determined that the declaratory judgment action was barred by res judicata as the nonconforming use had been determined during the criminal proceedings. *Id.* at *22-33. The court further concluded that res judicata barred Independence Excavating's challenge to the constitutionality of the zoning ordinance as this could have been raised during the criminal proceeding. *Id.* at *23. *See also Bohach v. Advery*, 7th Dist. No. 00 CA 265, 2002-Ohio-3202, ¶ 35-45 (declaratory judgment claim requesting judgment that use of property was a lawful nonconforming use barred by res judicata where appellant previously applied for a variance and it was denied.)

**{¶31}** Similarly, here, the nonconforming use defense could have been raised and ruled upon during the 1994 criminal action, which involved the same property use and same zoning ordinance at issue in the present case.

**{¶32}** Russell, however, argues that the nonconforming use was established in the 1989 case, and that the 1994 case merely involved an *expansion* of that nonconforming use. Russell further claims that "rather than contest his right to expand his non-conforming use, Harry * * * entered into a consent decree in which he agreed to clean up the vehicles in front of his property that could be seen from the

road." For these reasons, Russell asserts "the trial court improperly applied the doctrine of res judicata to the instant matter as the 1994 action involved only the expansion of a nonconforming use, not whether a non-conforming use existed." Alternatively, he claims that at minimum, there is a genuine issue of material fact regarding whether the doctrine of res judicata was properly applied here.

{¶33} However, the evidence in the record does not support Russell's assertions. First, the documents *in evidence* relative to the 1989 case do not demonstrate that Harry's nonconforming use was established during that proceeding. In that case, Harry was charged with violating "[R.C.] 519.24 Storing Aband. Veh. ATZ[.]" The related administrative search warrant indicates more specifically that Harry's property was found to be in violation of "Article VI, Section 601; Article V, Section 501; and Article XVIII, Section 1804" for storing numerous abandoned, wrecked, dismantled or unused trucks, automobiles, farm equipment, miscellaneous machinery/junk items and miscellaneous junk, scrap items and materials.

{¶34} Following a trial, the charges were dismissed. The trial court found, in a brief, hand-written entry: "after careful consideration of the evidence, exhibits [and] testimony of the many witnesses * * * that the use in question has political overtones, witness states Def [sic] as been singled out, junk is being used [and] eyesore is not visible from front, and there is no visible complainant."

{¶35} When asked to explain the context of these political overtones during his 1999 deposition, then township zoning inspector Kurilla stated:

I believe he was referring to the fact, and even [then] Prosecuting Attorney Vitullo commented in the newspaper after this, that by Mr. Harry Russell having filed petitions for his candidacy to run for office of the Township trustee subsequent to the filing of the criminal case, and Vitullo said that I didn't know that running for political office was a defense for a zoning violation. Apparently the Judge concluded that Mr. Harry Russell's candidacy in some manner had a bearing on the

violation.

{¶36} Second, there is nothing within the documents in the record pertaining to the 1994 case to indicate that the 1994 charge was based upon an unlawful expansion of an established nonconforming use. Russell seems to argue that the 1994 case did not concern the rear of the property; however, this is inaccurate. In the 1994 case, Harry was charged with violating Article XVII, Section 1704 of the Zoning Ordinance for maintaining an automobile graveyard and junkyard in the "front, side, *and rear* yards of the property." He was subsequently found guilty of the charge and ordered to "completely remove from the subject property any remaining abandoned, wrecked, unused, and/or dismantled automobiles, trucks, automobile parts or other junk items."

{¶37} A letter dated July 27, 1998 from Kurilla with regard to Harry's compliance with the 1994 order, notes that an inspection revealed Harry continued to violate the ordinance by storing vehicles in the rear of his property, in violation of the trial court's order.

{¶38} And contrary to Russell's assertions on appeal, there was no "consent decree" involved in the 1994 case. In the July 1995 entry, the trial court suspended the bulk of the fines imposed on the condition that Harry would bring the property into compliance with zoning regulations, which, in any event, he did not do. Russell's contention in his brief that "Harry P. Russell entered into a consent decree which he agreed to clean up the vehicles in the front of his real property that could be seen from the road[,] * * * [r]ather than contest his right to expand his non-conforming use," is simply unsupported by the evidence in the record.

{¶39} Third, Russell's reliance upon the 1999 deposition testimony of Kurilla is misplaced. That testimony only establishes that the 1989 and 1994 criminal actions were different in that the 1989 case involved vehicles and junk that could not be seen from the road, whereas the 1994 involved junk and vehicles that were all over the property. Kurilla never stated in his deposition that the 1994 case concerned an

attempt to enlarge an established nonconforming use; the discussion about the distinctions between the two cases arose when Kurilla was explaining discussions he had with the prosecutor about potential double jeopardy implications of filing new charges, insofar the 1989 charges had been dismissed.

{¶40} In sum, Russell's sole assignment of error is meritless. The time for raising the nonconforming use defense was in the 1994 criminal proceedings, and the trial court properly concluded Russell's claims are barred by res judicata. Viewing the evidence in the light most favorable to Russell, there are no genuine issues of material fact regarding whether the doctrine of res judicata applies here. The trial court properly granted summary judgment in favor of Crivelli. Accordingly, the judgment of the trial court is affirmed.

Donofrio, P. J., concurs.

Waite, J., concurs.