I agree with the majority's conclusion that a writ be granted denying the requested writ, but also ordering the Industrial Commission to refer this matter to the Administrator of the Bureau for consideration of temporary total disability compensation. I write separately because I see res judicata, not continuing jurisdiction, as the issue in this case. For the reasons set forth in the magistrate's decision, res judicata does not apply.
 (APPENDIX A.) IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Sylvia M. Johnson, :
Relator, :
v. : No. 05AP-1187
Cincinnati Schools and : (REGULAR CALENDAR) Industrial Commission of Ohio, :
Respondents. :
 NUNC PRO TUNC MAGISTRATE'S DECISION Rendered on June 8, 2006 Weisser and Wolf, and Lisa M. Clark, for relator.
Frost Brown Todd LLC, and Hilla M. Zerbst, for respondent Cincinnati Schools.
Jim Petro, Attorney General, and Charissa D. Payer, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 13} Relator, Sylvia M. Johnson, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total disability ("PTD") compensation and ordering the commission to find that she is entitled to PTD compensation.
Findings of Fact:
 {¶ 14} 1. Relator has sustained four work-related injuries and her claims have been allowed as follows:
98-398114: left knee strain/sprain
PEL231493: acute sprain of the right knee and acute sprain of the right ankle associated with old traumatic arthritis; hematoma of the right leg; aggravation of pre-existing arthritis of the right leg; depressive disorder nec.
96-553576: acute low back strain.
97-383739: tear rotator cuff, left; tear left biceps; arthropathy nos — shoulder, left.
 {¶ 15} 2. Relator received an unspecified period of temporary total disability ("TTD") compensation.
 {¶ 16} 3. On December 27, 2004, the Ohio Bureau of Workers' Compensation ("BWC") filed a motion seeking to terminate relator's TTD compensation.
 {¶ 17} 4. That matter was heard before a district hearing officer ("DHO") on January 28, 2005 and was granted. Specifically, the DHO relied upon the December 8, 2004 medical report of Roberto Madrigal, Ph.D., and the November 19, 2004 report of Stephen T. Autry, M.D., and concluded that relator's allowed conditions had reached maximum medical improvement ("MMI"). As such, relator's TTD compensation was terminated as of January 28, 2005.
 {¶ 18} 5. Thereafter, relator filed an application for PTD compensation on May 10, 2005. On her application, relator indicated that she had graduated from high school, and that she had attended Concise Clerical School from June 2000 through January 2002. Relator further indicated that she could read, write, and perform basic math. Relator listed her past employment as kitchen cook, catering, clerk and lunchroom manager, and lunchroom manager.
 {¶ 19} 6. In support of her application, relator submitted two reports from her treating physician, Nancy McDonough, M.D. On February 2, 2002, Dr. McDonough opined that, in her opinion, relator was permanently and totally disabled from all employment. When asked in August 2005 whether her opinion had changed, Dr. McDonough indicated that it had not. In her opinion, relator remained permanently and totally disabled.
 {¶ 20} 7. Relator was examined by Michael A. Murphy, Ph.D., at the request of the commission. Dr. Murphy examined relator for her allowed psychological condition on July 8, 2005, and issued a report dated July 15, 2005. Dr. Murphy concluded that relator's allowed psychological condition had reached MMI and assessed a 20 percent whole person impairment relative thereto. Dr. Murphy also concluded that relator's allowed psychological condition was not work-prohibitive and that she could return to any of her former positions of employment or any other sustained remunerative employment for which she was otherwise qualified.
 {¶ 21} 8. Relator was also examined by James R. Donovan, Jr., M.D., who examined relator and issued a report dated July 24, 2005. In that report, Dr. Donovan identified the medical records which he reviewed and provided his physical findings upon examination. Relative to relator's left knee sprain/strain, Dr. Donovan noted that relator continued to have reduced range of motion and pain in her left knee and noted that there was a reduction in her symptomatology with physical therapy and cortisone injections. Dr. Donovan opined that, in his opinion, surgery might offer improvement of her condition. Therefore, with respect to her allowed conditions of left knee sprain/strain, Dr. Donovan concluded that relator was not at MMI. In considering the allowed conditions relative to relator's right leg, knee and ankle, Dr. Donovan concluded that relator had reached MMI with regards to the aggravation of the preexisting arthritis of the right leg; however, he opined that, with respect to her right knee and ankle, she had not reached MMI. Dr. Donovan recommended that an assessment be performed to determine the value of arthroscopic or more extensive surgery relative to the allowed condition of "acute sprain of the right knee and acute sprain of the right ankle associated with old traumatic arthritis." With regard to relator's acute low back strain, Dr. Donovan opined that relator had reached MMI and he assessed an eight percent whole person impairment. Relative to relator's allowed conditions involving her left shoulder, Dr. Donovan opined that relator had reached MMI, and noted that she continues to have reduced strength, painful palpation throughout and reduction in range of motion. Dr. Donovan assessed a ten percent whole person impairment for this condition. Dr. Donovan also offered his opinion that, at this time, relator was not capable of any physical work activity.
 {¶ 22} 9. The record also contains the April 14, 2005 report of Thomas W. Heitkemper, Ph.D., who opined that, based upon her allowed psychological conditions, relator was permanently and totally disabled.
 {¶ 23} 10. Relator's application for PTD compensation was heard before a staff hearing officer ("SHO") on October 14, 2005, and resulted in an order denying the application based upon the finding that some of relator's allowed physical conditions were not at MMI. Specifically, the SHO stated as follows:
The injured worker was examined at the request of the Industrial Commission by Dr. James Donovan with respect to the allowed physical conditions in the claims. Dr. Donovan opined that the injured worker has not yet reached maximum medical improvement considering the allowed right knee sprain and right ankle sprain conditions stemming from the injury reflected in PEL231493. Specifically, Dr. Donovan noted that the injured worker continues to have reduced range of motion and painful palpation with respect to the right knee and right ankle conditions. He further reported that there has been no surgical treatment and no assessment for the value of arthroscopic or more extensive surgery. Based on that, Dr. Donovan opined that the injured worker has not reached maximum medical improvement and would benefit from additional orthopedic evaluation.
The Staff Hearing Officer finds that claim PEL231493 is also allowed for a psychological condition, depressive disorder NEC. The injured worker was evaluated by Dr. Michael Murphy at the request of the Industrial Commission with respect to that condition. Dr. Murphy opined that the injured worker has reached maximum medical improvement considering the allowed psychological condition and has a resulting Class I and II levels of impairment which he rated at 20% to the whole person. Dr. Murphy opined, however, that the allowed psychological condition is not of a work-prohibitive nature. Dr. Murphy completed an Occupational Activity Assessment Form which he attached to his medical report wherein he reiterated his opinion that the allowed psychological conditions [sic] does not prevent the injured worker from returning to any former position of employment or any other form of sustained remunerative employment.
The Staff Hearing Officer finds that the injured worker has not yet reached maximum medical improvement considering all of the allowed physical conditions in the claims. The Staff Hearing Officer further finds that the allowed psychological condition does not prevent the injured worker from per-forming any form of gainful employment. Accordingly, the Staff Hearing Officer denies the injured worker's Application for Permanent Total Disability Compensation based on a determination that she has not yet reached maximum medical improvement considering the allowed physical conditions in the claims.
This order is based on the medical report of Dr. James Donovan dated 07/24/2005 and Dr. Michael Murphy dated 07/08/2005.
 {¶ 24} 11. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 25} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 26} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus.Comm. (1994), 69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephensonv. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v.Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 27} In this mandamus action, relator argues that the previous finding that her allowed physical conditions had reached MMI constitutes res judicata and argues that the commission was not permitted to find that any of those allowed physical conditions were not at MMI. Relator contends that there was no evidence of new and changed circumstances. Instead, relator argues that the issue of whether or not her allowed physical conditions had reached MMI was not before the commission in evaluating her application for PTD compensation and that Dr. Donovan should not have offered an opinion relative to that issue. Because there is no evidence that anything happened between the date the BWC had filed its motion to terminate her TTD compensation, and when relator filed her application for PTD compensation, relator contends that the commission was precluded from finding that any of her allowed physical conditions were not at MMI. For the reasons that follow, this magistrate disagrees.
 {¶ 28} The first issue to consider is whether Dr. Donovan's report constitutes some evidence upon which the commission could rely in denying relator's application for PTD compensation. The only aspect of Dr. Donovan's report which relator challenges is his finding that certain of her allowed physical conditions were not at MMI due to his opinion that surgery may improve her condition. Relator can cite to no case law or statute which precludes Dr. Donovan from giving this opinion. Simply because relator's allowed physical conditions had previously been found to have reached MMI based upon medical reports from November and December 2004, does not mean that Dr. Donovan cannot determine, as of July 2005, that some of her allowed physical conditions are not at MMI.
 {¶ 29} Looking at the reports of Drs. Autry (upon which the commission relied in finding that she had reached MMI) and Donovan, the magistrate notes that both doctors noted their findings upon examination. Dr. Autry noted the following: dorsiflexion of 40 degrees; plantar flexion of 20 degrees; and, 3/5 inversion and eversion of the ankle. Dr. Donovan noted the following: dosiflexion of right ankle reduced to 5 degrees; plantar flexion of right ankle reduced to 5 degrees; flexion of right knee reduced to 60 degrees; and, full extension of right knee. Upon review, the magistrate notes that the physical findings made by these two doctors are different.
 {¶ 30} Pursuant to State ex rel. Bing v. Indus. Comm.
(1991), 61 Ohio St.3d 424, it is undisputed that a person's condition can change over time and that a condition which has been found to have reached MMI can later become temporary again. Based upon the differences in the doctors' findings, it appears that there may have been some change in relator's condition. Therefore, Dr. Donovan's report and conclusions do constitute some evidence upon which the commission could rely.
 {¶ 31} The next issue to consider is whether or not the commission's determination in the DHO order of January 28, 2005, finding that all of relator's allowed physical conditions had reached MMI, constitutes res judicata so that the commission could not later determine that some of those allowed conditions were not at MMI. The doctrine of res judicata operates to preclude the relitigation of a point of law or fact which was at issue in a former action between the same parties and which was passed upon by a court of competent jurisdiction. See State exrel. Consumers Council v. Public Utilities Comm. (1985),16 Ohio St.3d 9. In State ex rel. B.O.C. Group, General Motors Corp. v.Indus. Comm. (1991), 58 Ohio St.3d 199, the court specifically noted that the doctrine of res judicata does not apply if the issue is the claimant's physical condition or their degree of disability at two entirely different periods of time.
 {¶ 32} In the present case, by order dated January 28, 2005, the commission relied upon the November 19, 2004 report of Dr. Autry for the conclusion that relator's allowed physical conditions had reached MMI. Approximately nine months later, on July 24, 2005, relator was examined by Dr. Donovan and he concluded that, at that time, certain of relator's allowed physical conditions were not at MMI because surgery had not been considered. The magistrate finds that it was not an abuse of discretion for the commission to rely upon the report of Dr. Donovan and conclude that certain of relator's allowed physical conditions were not at MMI and then in denying her application for PTD compensation. As stated previously, the physical findings noted by the doctors differed which indicated that there may have been some change in relator's condition. However, in spite of the fact that the commission did not abuse its discretion by relying upon the report of Dr. Donovan and in denying relator's application for PTD compensation on the grounds that her allowed physical conditions were not currently all at MMI, the magistrate does find that the commission did abuse its discretion by not, thereafter, referring relator's claim file on the issue of reinstating relator's TTD compensation.
 {¶ 33} Ohio Adm. Code 4121-3-34(D)(1)(f) provides as follows:
If, after hearing, the adjudicator finds that the injured worker's allowed medical condition(s) is temporary and has not reached maximum medical improvement, the injured worker shall be found not to be permanently and totally disabled because the condition remains temporary. In claims involving state fund employers, the claim shall be referred to the administrator to consider the issuance of an order on the question of entitlement to temporary total disability compensation. In claims involving self-insured employers, the self-insured employer shall be notified to consider the question of the injured worker's entitlement to temporary total disability compensation.
 {¶ 34} In his report finding that certain of relator's allowed physical conditions were not at MMI, Dr. Donovan also concluded, in no uncertain terms, that at the time of his evaluation, relator was not capable of performing any work activity including sedentary work activity. As such, based upon the report of Dr. Donovan, upon which the commission relied in denying her application for PTD compensation, relator was entitled to TTD compensation. The commission abused its discretion by not immediately referring relator's claim file for a hearing on this issue.
 {¶ 35} Based on the foregoing, this magistrate finds that the commission did not abuse its discretion by relying upon the report of Dr. Donovan and in denying relator's application for PTD compensation on the basis that Dr. Donovan opined that certain of relator's physical conditions were not at MMI. However, the commission did abuse its discretion by not referring relator's claim file for expedited consideration on the issue of her right, based upon the report of Dr. Donovan, to have her TTD compensation reinstated immediately. As such, this court should issue a writ of mandamus ordering the commission refer this matter to the Administrator of the Ohio Bureau of Workers' Compensation on the issue of relator's entitlement to have her TTD compensation reinstated.