{¶ 33} While I agree with the majority's conclusion that the requested writ be denied, I do so for slightly different reasons, and I therefore write separately.
 {¶ 34} Relator's employer presented relator with two options: to be laid off or to retire early. Without question, had relator's employer simply laid relator off from his light-duty job, relator would be deemed to have been involuntarily separated from his employment. He thus would be eligible for temporary total disability compensation under the Ohio Supreme Court's decision in State ex rel. B.O.C.Group, Gen. Motors Corp. v. Indus. Comm. (1991),58 Ohio St.3d 199, 569 N.E.2d 496.
 {¶ 35} By contrast, had relator's employer offered relator only the opportunity to retire early, relator's accepting the opportunity would render his retirement voluntary, precluding the receipt of temporary total disability compensation unless relator met the requirements of State ex rel. McCoy v.Dedicated Transport, Inc., 97 Ohio St.3d 25,2002-Ohio-5305, 776 N.E.2d 51.
 {¶ 36} Here, relator's employer combined the two options and presented them to relator. The fact that the employer presented the two options in tandem does not change the fundamental nature of either. The layoff, had relator chosen it, would still be an involuntary separation; the early retirement, in the absence of evidence that relator's injury caused him to choose retirement, remains a voluntary separation.
 {¶ 37} On that premise, a couple of observations are pertinent. Initially, the commission appears to premise its finding of voluntary separation in part on the fact that his departure was wholly unrelated to relator's injury. B.O.C.Group, however, makes clear that a separation may be involuntary even though it is unrelated to the employee's injury. Similarly, although the commission notes that the record contains no medical evidence that relator was temporarily disabled at the time he retired, relator was performing a light-duty job, having never been released to his former position of employment.
 {¶ 38} Second, relator's failure to seek employment following his separation is, in my opinion, largely irrelevant to determining whether he was voluntarily separated from his light-duty position. While a job search is a prerequisite to receiving wage loss, the decisions from the Supreme Court to date do not impose that requirement to prove an involuntary separation. Rather, relator's failure to maintain employment following a voluntary separation precludes his receiving temporary disability compensation under McCoy. *Page 178 
 {¶ 39} In the final analysis, I am compelled to agree with the majority that the commission did not abuse its discretion in refusing relator's request for temporary total disability compensation because relator chose an early retirement rather than a layoff.
 APPENDIX IN MANDAMUS {¶ 40} In this original action, relator, Richard Pierron, requests a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying him temporary total disability ("TTD") compensation on grounds that he voluntarily abandoned his employment with respondent Sprint/United Telephone Company and to enter an order granting said compensation.
 Findings of Fact {¶ 41} On September 21, 1973, relator sustained an industrial injury while employed as a telephone lineman for respondent Sprint/United Telephone Company ("Sprint"), a self-insured employer under Ohio's workers' compensation laws. On that date, relator fractured two vertebrae when he fell 12 to 15 feet from a telephone pole.
 {¶ 42} The industrial claim was initially allowed for "fracture dorsal vertebra; lumbar subluxation" and was assigned claim No. 535180-22.
 {¶ 43} In February or March 1974, relator underwent spinal-fusion surgery.
 {¶ 44} In October or November 1974, relator returned to light-duty employment at a warehouse operated by Sprint.
 {¶ 45} In early 1997, relator accepted Sprint's offer of a regular retirement after Sprint informed him that his light-duty position was being phased out and that he would be laid off.
 {¶ 46} From approximately April 1997 to March 1998, relator worked approximately five hours per week making deliveries for House of Flowers Gifts, located in Vandalia, Ohio. He was paid $3 per hour for his work.
 {¶ 47} Earlier, in 1990, relator began chiropractic treatments with Robert Fantasia, D.C.
 {¶ 48} On June 5, 2003, Dr. Fantasia wrote:
 The other medical conditions which are present and attributable to his formentioned [sic] work injury should include lumbar strain, traumatic myeoplathy [sic] and T-12 post traumatic syringolmyelia.
 These conditions are a direct and proximate result of the work injury as the patient fell from a great height injuring the lower thoracic and lumbar regions. *Page 179 
The patient has been totally disabled due to his injury since we have been treating this patient.
 {¶ 49} On June 17, 2003, citing Dr. Fantasia's report, relator moved for the allowance of additional conditions and for TTD compensation.
 {¶ 50} Relator's motion prompted Sprint to have relator examined by Gerald S. Steiman, M.D., on July 23, 2003. Dr. Steiman wrote:
 Mr. Pierron's history, medical record review, physical examination and pain assessment provide strong credible evidence to support the presence of a T12 post traumatic syringomyelia with traumatic myelopathy.
 It is my neurological opinion that Mr. Pierron's progressive myelopathic appearance renders his condition serious and significant. * * *
 When considering Mr. Pierron's objective physical findings, the history, medical record review, physical examination and pain assessment provide credible evidence that he has a significant myelopathic condition which creates a significant work impairment/disability.
 {¶ 51} On August 29, 2003, relator's June 17, 2003 motion was heard by a district hearing officer ("DHO"). Thereafter, the DHO issued an order additionally allowing the claim for "T-12 post traumatic syringomyelia, lumbar strain and traumatic myelopahty [sic]." The DHO also awarded TTD compensation beginning June 5, 2003, based upon Dr. Fantasia's June 5, 2003 report. The DHO's order states:
 The District Hearing Officer finds that the injured worker testified at hearing that he has not voluntarily left the work force but was involuntarily removed from a part-time job delivering flowers due to increasing pain radiating through his legs.
 {¶ 52} Sprint administratively appealed the DHO's order of August 29, 2003.
 {¶ 53} On a C-84 dated October 10, 2003, Dr. Fantasia certified TTD from June 17, 2001 to an estimated return-to-work date of December 30, 2003.
 {¶ 54} Following an October 10, 2003 hearing, a staff hearing officer ("SHO") issued an order stating that the DHO's order was modified. The SHO granted the additional claim allowances as granted by the DHO. However, the SHO denied TTD compensation, explaining:
 The Staff Hearing Officer finds that the injured worker retired from his position of employment for reasons unrelated to the industrial injury on 04/01/1997.
 {¶ 55} Relator administratively appealed the SHO's order of October 10, 2003 to the three-member commission. The commission decided to hear the appeal. *Page 180 
 {¶ 56} Following a February 19, 2004 hearing, the commission issued an order additionally allowing the claim. That portion of the order explains:
 It is the order of the Industrial Commission that this claim is additionally allowed for "T-12 post traumatic syringomyelia, lumbar strain, and traumatic myelopathy." This is supported by the 06/05/2003 report of Dr. Fantasia, and the 07/23/2003 report of Dr. Steiman.
 {¶ 57} The commission, with one member dissenting, denied TTD compensation with the following explanation:
 As to the request for the payment of temporary total disability compensation, the Industrial Commission finds that the injured worker had a low back surgery in this claim in 1974, and that he then returned to work for this employer in a lighter-duty capacity until 1997. The job he was performing was then being phased out, and the injured worker was given the option of being laid off or taking a regular (not disability) retirement. He chose the regular retirement. The injured worker testified that he found a part-time job delivering flowers from approximately April of 1997 to March of 1998. A fax communication in the file from Kathy Magoto of the House of Flowers confirms that the injured worker did work for approximately six months making deliveries as needed, perhaps five hours a week. There is no other evidence of employment since the injured worker's retirement. The injured worker has not worked since leaving the flower delivery activity.
 A review of the claim file reveals that the injured worker originally received an award for permanent partial disability of 30% in 1977. After a hearing on 11/22/1985, the injured worker was granted an increase in his percentage of permanent partial disability of 10%. The order noted that the injured worker was last paid temporary total disability compensation in 1974. There is no medical evidence in the file that the injured worker was temporarily disabled at the time he elected to retire from his job with this employer. Furthermore, there is no medical evidence of disability at or around the time of the injured worker's flower delivery activity.
 From the evidence submitted by the parties and the evidence in the file, the Commission finds that the injured worker voluntarily abandoned the work force when he retired in 1997. Despite the dissent's attempt to characterize the departure from the work force as involuntary, there is no evidence whatsoever that the injured worker sought any viable work during any period of time since he retired. The injured worker's choice to retire was his own. He could have accepted a lay-off and sought other work but he chose otherwise. It is not just the fact of the retirement that makes the abandonment voluntary in this claim, as the passage of time without the injured worker having worked speaks volumes. The key point which the dissent recognized though refuses to *Page 181 
accept here, is that the injured worker's separation and departure from the work force is wholly unrelated to his work injury.
 In State ex re[l]. McCoy v. Dedicated Transport, 97 Ohio St.3d 25, 2002-Ohio-5305
[776 N.E.2d 51], the Ohio Supreme Court held in the syllabus: A claimant who voluntarily abandoned his or her former position of employment or who was fired under circumstances that amount to voluntary abandonment of the former position would be eligible to receive temporary total disability compensation pursuant to R.C. 4123.56 if he or she reenters the work force and, due to the original industrial injury, becomes temporarily and totally disabled while working at his or her new job.
 (Emphasis added.) Subsequently, in State ex rel. Jennings v. Indus. Comm. 98 Ohio St.3d 288, 20[0]3-Ohio-737 [783 N.E.2d 898], the Supreme Court clarified its holding in McCoy: "It is important to note that this holding is limited to claimants who are gainfully employed at the time of their subsequent disabilities." In this case, there is no medical evidence that the injured worker left his job at the flower shop due to the allowed conditions in the claim. In addition, there is no medical evidence supporting disability at the time of the injured worker's employment at the flower shop.
 Therefore, the injured worker has not established that he is eligible for temporary total disability compensation. Accordingly, it is the order of the Industrial Commission that the request for temporary total compensation from either 06/17/2001 (according to the C84 signed by Dr. Fantasia on 10/10/2003) or from 06/05/2003 (based on the narrative report of Dr. Fantasia of that date) is denied. It is found that the injured worker did abandon and retire from his position of employment for reasons unrelated to the injury in this claim on or about 04/01/1997, and he was not employed on either of the two possible dates to start the payment of temporary total disability compensation (06/17/2001 or 06/05/2003). Therefore, the injured worker's request for temporary total disability compensation is denied.
(Emphasis sic.) The dissenting commission member wrote:
 I respectfully dissent from the decision to deny the injured worker's request for temporary total disability compensation based on a finding of voluntary abandonment.
 The rationale behind the voluntary abandonment theory is that temporary total disability compensation should not be paid to an injured worker if the injured worker's loss of income is due to a voluntary action the injured worker undertook rather than being due to the industrial injury. If an injured worker, for example, voluntarily retires and then later requests temporary total disability compensation, then under current case law compensation is not payable because the reason the injured worker is not working is not because of his *Page 182 
industrial injury, but rather is because he voluntarily chose to leave his job. This is not what has happened in this case.
 In this case, it is the employer that abandoned the injured worker, not the injured worker who abandoned the employer. The injured worker is being penalized, not for his own voluntary actions, but for the employer's voluntary actions. This decision turns the entire theory of voluntary abandonment on its head.
 The injured worker was working for the employer in a light duty job. There is no evidence that the injured worker ever desired to, or took any actions toward, terminating his employment. It is not the injured worker that undertook the voluntary act of retiring, rather it is the employer that terminated its employment relationship with the injured worker. It is the employer who approached the injured worker and informed the injured worker that the light duty job the injured worker was performing was being done away with. It is the employer who told the injured worker that the injured worker would either have to be laid off or would have to take a regular retirement.
 R.C. 4123.56(A) provides that temporary total disability compensation is not payable "for the period when any employee has returned to work, when an employee's treating physician has made a written statement that the employee is capable of returning to the employee's former position of employment, when work within the physical capabilities of the employee is made available by the employer or another employer, or when the employee has reached maximum medical improvement." No evidence was presented that the injured worker has ever been released to perform his former position of employment or has ever been found to be at maximum medical improvement. Rather the injured worker was not receiving temporary total disability compensation in this claim only because he had been working for his employer in a light duty job within his restrictions. Once the employer did away with the injured worker's light duty job, none of the statutory criteria for denying temporary total disability compensation applied in this case. Since the injured worker is still unable to perform his former position of employment, and light duty work within the injured worker's restrictions is no longer being offered by the employer, the injured worker is again entitled to receive temporary total disability compensation.
 There would be a voluntary choice by the injured worker resulting in a voluntary abandonment of employment in this case if the employer had given the injured worker a third choice (continue doing your light duty job), which the employer did not do.
 Under the definition of "voluntariness" being espoused in this claim, if a prisoner on death row is given the choice of dying by lethal injection or dying *Page 183 
by electrocution, if the prisoner chooses to die by lethal injection because such a method is the least painful of the two choices, by making that choice the condemned prisoner has converted what was his involuntary execution by the State into a voluntary choice by the prisoner to commit suicide.
 There is no authority being cited that can support the assertion that voluntary abandonment applies in the instant case. An injured worker who is unable to perform his former position of employment is not forbidden from receiving temporary total disability compensation simply because the employer offers, and then removes, an offer of light duty work. This is a dangerous, unprecedented and unsupported expansion of the voluntary abandonment theory. This decision would now permit all employers in this State to avoid paying temporary total disability compensation by simply bringing injured workers back to token light duty jobs and then turning around and doing away with those jobs shortly thereafter.
 This decision turns the voluntary abandonment theory from a situation where it is the injured worker's own actions that terminate his eligibility to receive temporary total disability compensation into a situation where it is the employer's actions that terminate the injured worker's eligibility to receive compensation. It is fundamentally unfair to put the employer in control of the injured worker's receipt of temporary total disability compensation by permitting the employer to force a "voluntary" abandonment upon an injured worker.
 Based upon the law, I would grant the injured worker's 06/17/2003 C86 motion in full.
 {¶ 58} On June 14, 2004, relator moved for reconsideration. Thereafter, the commission denied reconsideration.
 {¶ 59} On April 25, 2006, relator, Richard Pierron, filed this mandamus action.
 Conclusions of Law {¶ 60} The issue is whether the commission abused its discretion by finding that relator voluntarily abandoned his employment with Sprint and thus is precluded from obtaining an award of TTD compensation.
 {¶ 61} The magistrate finds that the commission abused its discretion by finding that relator voluntarily abandoned his employment with Sprint. Accordingly, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 62} When an employee has taken action that would preclude his returning to his former position of employment even if he were able to do so, he is not entitled to continued TTD compensation since it is his own action, rather than the industrial injury, that prevents his returning to his former position of employment. *Page 184 State ex rel. Jones Laughlin Steel Corp. v. Indus.Comm. (1985), 29 Ohio App.3d 145, 29 OBR 162,504 N.E.2d 451 (the claimant's voluntary retirement from his employer precluded TTD compensation).
 {¶ 63} However, an injury-induced retirement is not considered to be voluntary. State ex rel. RockwellInternatl. v. Indus. Comm. (1988), 40 Ohio St.3d 44,531 N.E.2d 678.
 {¶ 64} In State ex rel. B.O.C. Group, Gen. Motors Corp.v. Indus. Comm. (1991), 58 Ohio St.3d 199, 569 N.E.2d 496, the claimant was laid off by her employer for reasons unrelated to her industrial injury. Nevertheless, the commission awarded TTD compensation for a period subsequent to the layoff. In a mandamus action, the employer contended that the layoff precluded entitlement to TTD compensation. The court disagreed:
 Relying on Rockwell, B.O.C. asserts that temporary total disability compensation is improper since claimant's departure was not injury-related. This is incorrect. An employer-initiated departure is still considered involuntary as a general rule. Rockwell did not narrow the definition of "involuntary," it expanded it. While certain language in Rockwell may be unclear, its holding is not. The lack of a causal connection between termination and injury has no bearing where the employer has laid off the claimant.
Id. at 202, 569 N.E.2d 496.
 {¶ 65} In State ex rel. Gen. Mills, Inc. v. Indus.Comm., Franklin App. No. 02AP-127, 2002-Ohio-4727,2002 WL 31013131, the claimant was laid off from his light-duty job that the employer had provided him following his industrial injury. Subsequent to his layoff, the commission awarded TTD compensation. In mandamus, the employer attempted to distinguish B.O.C. Group by arguing that some of its employees were not laid off due to the fact that they had seniority over the claimant. The employer asserted that the layoff was due to claimant's lack of seniority and, thus, he should be precluded from TTD compensation. This court rejected the employer's argument.
 {¶ 66} In State ex rel. McCoy v. Dedicated Transport,Inc., 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51, the syllabus reads:
 A claimant who voluntarily abandoned his or her former position of employment or who was fired under circumstances that amount to a voluntary abandonment of the former position will be eligible to receive temporary total disability compensation pursuant to R.C. 4123.56 if he or she reenters the work force and, due to the original industrial injury, becomes temporarily and totally disabled while working at his or her new job.
 {¶ 67} In State ex rel. Jennings v. Indus. Comm.,98 Ohio St.3d 288, 2003-Ohio-737, 783 N.E.2d 898, the claimant was fired for unexcused absenteeism. There *Page 185 
was no evidence that she secured other employment. Thereafter, the commission denied TTD compensation, finding that the firing constituted a voluntary abandonment of her former position of employment. Quoting the syllabus in McCoy, theJennings court upheld the commission's decision based upon the claimant's failure to secure another job after she was fired.
 {¶ 68} In State ex rel. Eckerly v. Indus. Comm.,105 Ohio St.3d 428, 2005-Ohio-2587, 828 N.E.2d 97, the claimant was fired for unexcused absenteeism. The commission declared that the claimant's discharge constituted a voluntary abandonment of his former position of employment pursuant toState ex rel. Louisiana-Pacific Corp. v. Indus. Comm.
(1995), 72 Ohio St.3d 401, 650 N.E.2d 469, and, on that basis, denied TTD compensation.
 {¶ 69} In upholding the commission's decision, theEckerly court, at It 9, explained:
 The present claimant seemingly misunderstands McCoy. He appears to believe that so long as he establishes that he obtained another job — if even for a day — at some point after his departure from Tech II, TTC eligibility is forever after reestablished. Unfortunately, this belief overlooks the tenet that is key to McCoy and all other TTC cases before and after: that the industrial injury must remove the claimant from his or her job. This requirement obviously cannot be satisfied if claimant had no job at the time of the alleged disability.
(Emphasis sic.)
 {¶ 70} Here, the commission focused its analysis on both the retirement in early 1997 and relator's subsequent employment history. The magistrate will first address the retirement in early 1997.
 {¶ 71} In explaining why it found the retirement to be voluntary, the commission concluded that relator had a choice when he was informed by Sprint that his job was being phased out and that he would be laid off. According to the commission's order, "[h]e could have accepted a lay-off and sought other work but he chose otherwise."
 {¶ 72} Implicit in the commission's quoted statement is the notion that relator had a realistic hope of someday returning to light-duty work at Sprint if he were to accept the layoff and not take a regular retirement. There is no evidence in the record to suggest that the layoff was going to be temporary. The undisputed evidence is that the light-duty warehouse job that relator had held for some 23 years was "being phased out."
 {¶ 73} Given the absence of any evidence that relator had a realistic hope of returning to employment at Sprint after the layoff, refusing to take a regular *Page 186 
retirement would seem to be foolish, if not financially unsound. The "choice" that the commission finds is not based upon evidence in the record.
 {¶ 74} The retirement in early 1997 was clearly an employer-initiated departure under B.O.C. Group.
Relator was not required under those circumstances to show that his retirement in early 1997 was injury-induced, as the commission seems to suggest.
 {¶ 75} Given that relator's retirement in early 1997 must be found to be involuntary, there was no cause for the commission to engage in an analysis under McCoy andJennings. As previously noted, McCoy permits a claimant to reinstate his entitlement to TTD compensation following a voluntary work departure by returning to gainful employment. Because claimant did not voluntarily abandoned his employment at Sprint, there was no cause for the commission to determine whether it might be found that relator reinstated his TTD eligibility by returning to gainful employment.
 {¶ 76} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its order to the extent that it determines relator to be ineligible for TTD compensation, and to enter an amended order that adjudicates relator's request for TTD compensation based upon the medical evidence before the commission.
Kenneth W. Macke, Magistrate