THE STATE EX REL. DIXON, APPELLANT, *v.* AIRBORNE
EXPRESS, INC. ET AL., APPELLEES.

[Cite as *State ex rel. Dixon v. Airborne Express,
Inc.,* 108 Ohio St.3d 200, 2006-Ohio-660.]

(No. 2005–0156—Submitted October 25, 2005—Decided March 1, 2006.)

---

**Per Curiam.**

{¶ 1} This is an appeal from the denial of a writ of mandamus seeking to reinstate the payment of living-maintenance compensation. We affirm.

{¶ 2} Jeffrey L. Dixon hurt his lower back while employed as a delivery driver for self-insured Airborne Express, Inc. It eventually became clear that Dixon could never return to the heavy lifting that his position of employment had

entailed. Recognizing this, in August 2001, Dixon's attending physician proposed vocational rehabilitation for Dixon.

{¶ 3} Airborne, through its third-party administrator, agreed to Dixon's participation in vocational-rehabilitation services. Dixon responded on August 31, 2001, with a formal motion requesting approval of a vocational-rehabilitation plan ("VRP") and compensation payment while he participated. On September 6, 2001, Airborne approved the motion to this extent:

{¶ 4} "1. The employer authorizes a vocational rehabilitation plan for the claimant to be administered by the State of Ohio RSC (Rehabilitation Services Commission), per the claimant's request. The case has been referred to the RSC and a vocational plan is being created.

{¶ 5} "2. The employer agrees to pay the claimant Nonworking Wage Loss benefits while he is participating in the Vocational Rehabilitation Plan."

{¶ 6} Three weeks later, vocational-evaluation specialist William Braunig issued his recommendations:

{¶ 7} "1. Consider direct placement services. Mr. Dixon would appear to have retained the physical capacities to perform his past work as a manager and mortgage loan collector (as customarily performed). Additionally, he may be capable of performing similar work in collections and bookkeeping.

{¶ 8} "2. If direct placement is unsuccessful, consider formal skills training in the business field at the Associate Degree level.

{¶ 9} "3. Consider assistive technology as needed."

{¶ 10} Dixon's August 2001 motion was heard on April 29, 2002. An Industrial Commission district hearing officer held that Dixon's motion for authorization of a rehabilitation plan was mooted by Airborne's prior approval. The district hearing officer ordered the employer to pay living-maintenance compensation "once the claimant enters the approved vocational rehabilitation plan." The June 21, 2002 order of a staff hearing officer did not change the substance of that order.

{¶ 11} In September 2002—without any consultation with Airborne—Dixon began a four-year degree program at Wright State University. His request for living-maintenance benefits under R.C. 4121.63 was denied:

{¶ 12} "On 09/06/2002, the injured worker started a program at Wright State University. The Hearing Officer finds that the program that the injured worker has enrolled in at Wright State University is not a certified vocational rehabilitation plan. There was no documentation that the four years of college at Wright State University were approved as a rehabilitation plan by the self-insured employer. The self-insured employer has stated that they will pay Living Maintenance once a certified vocational rehabilitation plan is in place.

{¶ 13} "At this time, as the injured worker is not in a certified vocational rehabilitation plan, Living Maintenance benefits from 09/06/2002 to 01/13/2003 are denied.

{¶ 14} "This order is based on the lack of documentation showing that the injured worker is enrolled in a certified rehabilitation plan."

{¶ 15} After exhausting administrative appeals, Dixon petitioned the Court of Appeals for Franklin County for a writ of mandamus, claiming that his entitlement to living-maintenance benefits was res judicata pursuant to the April 29, 2002 and June 21, 2002 orders. The court of appeals disagreed and denied the writ, prompting this appeal as of right.

{¶ 16} Dixon repeats his res judicata argument, asserting that his right to living-maintenance compensation was conclusively decided by the April 29 and June 21, 2002 orders. Because Dixon cannot demonstrate the identity of issues necessary to sustain res judicata, his position fails.

{¶ 17} Res judicata demands an identity of issues in the proceedings under examination. *State ex rel. B.O.C. Group, Gen. Motors Corp. v. Indus. Comm.* (1991), 58 Ohio St.3d 199, 569 N.E.2d 496. The April 29, 2002 and June 21, 2002 orders that Dixon relies on stated only that living maintenance was payable subject to Dixon's participation in an *approved* VRP. They did not—as Dixon believes—declare that *any* VRP submitted was inherently an approved one, nor will we infer such a meaning. The vocational assessment done shortly after permission to create a VRP was granted recommended direct job placement without further training or, at most, Dixon's enrollment in an associate's degree program. Dixon's enrollment in a four-year bachelor's degree program is not consistent with that recommendation. The commission did not, therefore, abuse its discretion in concluding that the appropriateness of this program had not been adjudicated by previous commission orders.

{¶ 18} The commission also did not abuse its discretion in withholding approval of the Wright State University vocational plan, because Dixon had submitted no evidence that it was necessary, despite the earlier vocational-assessment report. The materials subsequently submitted regarding the college program are simply standard forms that, again, do not explain why this particular program was key to successful reintegration into the labor market.

{¶ 19} The judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

Weisser & Wolf and Lisa M. Clark, for appellant.

Buckingham, Doolittle & Burroughs, L.L.P., and Michael L. Williams, for appellee Airborne Express, Inc.

Jim Petro, Attorney General, and Gerald H. Waterman, Assistant Attorney General, for appellee Industrial Commission.