The STATE of Ohio ex rel. VIZZO

v.

INDUSTRIAL COMMISSION OF OHIO et al.

[Cite as *State ex rel. Vizzo v. Indus. Comm.*, 189 Ohio App.3d 185, 2010-Ohio-3378.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 09AP–344.

Decided July 20, 2010.

Perry–Dieterich & Associates and Eric R. Dieterich, for relator.

Richard Cordray, Attorney General, and Kevin J. Reis, Assistant Attorney General, for respondent the Industrial Commission of Ohio.

---

CONNOR, Judge.

{¶ 1} Relator, Anthony L. Vizzo, filed this original action seeking a writ of mandamus to order respondent, the Industrial Commission of Ohio ("the commission"), to vacate its order that denied him living-maintenance payments for the period from June 12, 2005, through January 15, 2006, and to further order the commission to grant relator those benefits.

{¶ 2} This court referred the matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The parties stipulated to the pertinent evidence and filed briefs. The magistrate rendered a decision, including findings of fact and conclusions of law, which is appended to this decision. Therein, the magistrate determined that the commission abused its discretion by denying relator living-maintenance payments for the period in question and further concluded that the commission should enter an order granting that compensation. As a result, the magistrate therefore recommended that this court grant relator's request for a writ of mandamus.

{¶ 3} The commission has since filed timely objections to the magistrate's decision. Relator has filed a memorandum in response. As a result, the case is now before this court for a full, independent review.

{¶ 4} In its objections, the commission argues:

Objection No. 1: The Magistrate erred when the Magistrate found an abuse of discretion despite the Magistrate's finding and conclusion that the SHO's/commission's interpretation of the VRP is technically correct.

Objection No. 2: The Magistrate's errors creates a "substantial compliance" standard.

Objection No. 3: The Magistrate's decision weakens the VRP.

Since none of the commission's objections regard the magistrate's findings of fact, we adopt the findings of fact of the appended magistrate's decision. However, we wish to further clarify the legal analysis and conclusions of law in the decision.

{¶ 5} All of the commission's objections challenge the magistrate's decision on contract principles. The commission argues that a vocational rehabilitation plan ("VRP") is based in contract, and the injured worker must fulfill the obligations of the agreement in order to receive living-maintenance payments. One such obligation was for relator to attend scheduled meetings with his case manager.

The commission notes that relator missed three meetings and thereby failed to fulfill the obligations of his VRP. As a result, the commission argues that living-maintenance payments were properly denied for the period in question.

{¶ 6} It is well settled that "res judicata demands an identity of issues in the proceedings under examination." *State ex rel. Dixon v. Airborne Express, Inc.,* 108 Ohio St.3d 200, 2006-Ohio-660, 842 N.E.2d 502, ¶ 17, citing *State ex rel. B.O.C. Group, Gen. Motors Corp. v. Indus. Comm.* (1991), 58 Ohio St.3d 199, 569 N.E.2d 496.

{¶ 7} Although a more detailed recitation of the facts of this matter is set forth in the appended decision, we feel that a brief recitation will help illustrate our analysis. Relator's original VRP was approved in October 2002 and was amended 15 times before being closed in January 2004, apparently as a result of relator's involvement in an automobile accident. In March 2004, however, the Bureau of Workers' Compensation ("BWC") opened a second VRP for relator. The second VRP was amended seven times, and each amendment provided for the payment of living-maintenance payments. In a span of five months, relator missed three scheduled meetings with his case manager. As a result, the BWC closed relator's file, and his living-maintenance payments ceased as of April 24, 2005. In response, relator challenged the closure of his plan through the appropriate channels. On December 8, 2005, it was finally determined that the closure was improper because relator had met every other portion of his case plan. This determination was never appealed. Living-maintenance payments were therefore reinstated in January 2006 in accordance with the December 8, 2005 order.

{¶ 8} Each of the commission's three objections would require this court to revisit the commission's December 8, 2005 order. Indeed, the objections are all based upon the position that the closure of relator's second VRP was proper. In objection one, the commission argues: "The violation of the VRP is not a technical breach. The injured worker repeatedly failed to meet with the field manager who traveled to a city to meet with the injured worker." In objection two, the commission argues that the magistrate's decision creates a "substantial-compliance" standard for fulfilling VRP requirements. In objection three, the commission argues that the magistrate's decision weakens the VRP because it makes the meaning and enforcement of a VRP subject to interpretation.

{¶ 9} Again, these arguments all challenge the substantive findings and conclusions of the December 8, 2005 order. Indeed, that order indicated that the closure of relator's VRP was improper because he had met all the other portions of his VRP. If a substantial-compliance standard was established by anything, it was this December 8, 2005 order and the failure to appeal therefrom. Furthermore, if the VRP was weakened or diluted as a result of being subjected to

interpretation, it was at this stage in the proceedings rather than by the magistrate of this court.

{¶ 10} As a result, after independently reviewing this matter and providing further clarification, we conclude that the magistrate has properly applied the relevant law to the pertinent facts. Thus, we adopt the magistrate's decision as our own. We accordingly grant the requested writ of mandamus, vacate the commission's order denying living-maintenance payments for the period from June 12, 2005, through January 15, 2006, and order the commission to grant relator those benefits.

Objection overruled and writ granted.

KLATT and McGRATH, JJ., concur.

---

# A P P E N D I X

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

The State of Ohio ex rel. Vizzo

v.

Industrial Commission of Ohio et al.

No. 09AP–344

(REGULAR CALENDAR)

---

## MAGISTRATE'S DECISION

Rendered on August 26, 2009

---

Perry–Dieterich & Associates and Eric R. Dieterich, for relator.

Richard Cordray, Attorney General, and Kevin J. Reis, Assistant Attorney General, for respondent the Industrial Commission of Ohio.

## IN MANDAMUS

{¶ 11} Relator, Anthony L. Vizzo, has filed this original action requesting that this court issue a writ of mandamus ordering respondent the Industrial Commission of Ohio ("the commission") to vacate its order that denied him living-maintenance payments for the period June 12, 2005, through January 15, 2006, and ordering the commission to grant him those benefits.

Findings of Fact:

{¶ 12} 1. Relator sustained a work-related injury and his claim has been allowed for "FX astragalus-closed left; FX tibula NOS-closed left."

{¶ 13} 2. When relator's employer, Bob Bay & Sons Inc., was no longer able to accommodate his permanent light-duty restrictions in August 2002, relator was referred for vocational rehabilitation. The goal was to return relator to work in a different job with a different employer and initially involved job-seeking-skills training, job development, job search, and adjustment counseling. The original vocational rehabilitation plan ("VRP") was approved in October 2002.

{¶ 14} 3. This original VRP was amended 15 times. The following amendments are relevant: (a) in November 2002, it was noted that the job-seeking-skills training was proceeding slowly, and active physical therapy, adjustment counseling, and vocational guidance were ordered. At that time, it was determined that relator could not continue pursuing job-seeking-skills training, (b) in December 2002, active physical therapy was continued and short-term training was requested so that relator could obtain a driver's license, (c) in January 2003, active physical therapy was continued, and relator continued to attend driving school, (d) in February 2003, relator's physical therapy was continued and it was noted that he had completed driving-school classes, (e) in March 2003, it was noted that relator needed to continue his adjustment counseling, and the question of paying for his medications was raised. Further, it was recommended that the VRP be amended to include work conditioning, (f) in April 2003, physical therapy and adjustment counseling were completed, relator obtained his Ohio driver's license, and vocational guidance followed by job-seeking-skills training, job development, and placement were recommended, (g) in July 2003, it was noted that relator had completed four weeks of a job search and that he had made a good-faith effort to search for a job, making face-to-face job contacts. Relator had applied for jobs in customer service, retail, and front-desk positions, but he had yet to have any interviews. It was determined that relator's job search would continue for an additional four weeks, (h) in August 2003, it was noted that relator had completed seven weeks of job search. It was further noted that relator was depressed and frustrated with the length of time it was taking for him to obtain other work. It

was noted that relator had many barriers to finding new work, including a lack of social and interpersonal skills, as well as a lack of education and technical training. It was recommended that relator participate in a work/career assessment, (i) in September 2003, relator's case manager contacted relator's physician of record to see whether some of relator's restrictions could be lifted; however, relator's physician kept him on the same strict sedentary restrictions. The results of the work/career assessment were discussed and demonstrated that relator displayed some computer and data-entry skills. It was recommended that relator continue career exploration and work adjustment, including role playing to help him feel more comfortable with social interactions. The possibility that relator could pursue some computer training following the work-adjustment program was discussed, (j) in October 2003, at the one-year mark, the 12th amendment to the VRP was formalized. It was noted that relator would continue with the previous plan, followed by job shadowing, (k) in December 2003, it was noted that relator was in the process of interviewing and speaking to academic counselors at Columbus State and Ohio University. It was decided that relator would pursue an associate's degree at either university in the field of media design. It was expected that relator would begin classes in January 2004, (l) later in December 2003, the VRP was amended for the 15th time. It was specifically noted that relator had been accepted to attend Ohio University beginning spring quarter 2004 and that the Ohio Bureau of Workers' Compensation ("BWC") would continue to support him in obtaining an associate's degree in the field of media design.

{¶ 15} 4. In January 2004, relator's file was closed. In his brief, relator indicates that he was involved in an automobile accident at that time.

{¶ 16} 5. In March 2004, relator's rehabilitation file was reopened. A second VRP was prepared, providing for the following:

Tony is to attend OUL beginning 3/29/04 for a 2 year program in Electronic Media Technology. BVR has agreed to pay for his tuition and for his books. This has been discussed with the MCO Michelle Purdy and with Jeff Buffer his DMC. Tony is to attend on a full time basis (minimum of 12 credit hours/quarter) and will maintain a 2.00 GPA. in order to maintain the support of BWC while attending school. OUL is an accredited school and provides job placement assistance, however it is likely that Tony will also need further assistance in placement activities. Tony is to provide an official grade card to be sent to his DMC— Mr. Buffer— indicating his grades and class schedule. Tony will not receive his grades for approximately two weeks after the quarter is completed. These grades will be forwarded when received from the school.

LM is being requested to assist the IW with rehabilitation associated costs.

Case Management Services is being requested to assist Tony with coordinating required documentation from school, ensuring registration for fall quarter, and to finalize an unpaid intership [sic]. The internship being discussed is through Innerphase Video in Lancaster, the Lancaster Arts Festival and Electromedia in Groveport. Each have been in contact with FCM, and we are awaiting a firm start date.

Vocational Guidance and Exploration services are being requested to expand arena needed for an unpaid internship position. The IW and FCM will meet weekly to discuss new opportunities for an internship and to assist in preparing for an interview with prospective employers.

This second VRP would ultimately be amended seven times:

Original: 3/29/04 – 4/25/04 [Case Management ("CM")] and [Living Maintenance ("LM")] (long-term training per BVR)

Amendment # 1: 4/26/04 – 6/13/04 CM and LM (long-term training per BVR)

Amendment # 2: 6/14/04 – 7/04/04 CM, Voc Guidance, and LM

Amendment # 3: 7/05/04 – 9/05/04 CM, Voc Guidance, and LM

Amendment # 4: 9/06/04 – 1/02/05 CM and LM (long-term training per BVR)

Amendment # 5: 9/06/04 – 1/02/05 CM and LM with tuition included.

Amendment # 6: 1/03/05 – 3/20/05 CM and LM (long-term training per BVR)

Amendment # 7: 3/21/05 – 6/12/05 CM and LM (long-term training per BVR)

{¶ 17} 6. Relator continued attending Ohio University and, with the exception of one class that he failed but passed the next grading period, relator's grades remained satisfactory. Further, relator secured an unpaid internship position at the Lancaster Arts Festival in the ticket office and at the YMCA.

{¶ 18} 7. The fifth amendment to the second VRP dated September 2004 provides:

Tony's internship went well according to the Arts Festival. He has assisted in database configuration, selling tickets, stage preparation, video and editing the Arts Festival, and stage production for the main concert. He has assisted in the tear down of the festival and is currently assisting with computer database for finalizing the event. He had good attendance and was willing to work within a team environment.

{¶ 19} 8. In October 2004, relator missed an appointment with his rehabilitation counselor. Relator missed a second appointment in February 2005. On February 11, 2005, relator was sent the following letter:

It has been brought to my attention that you have recently missed a scheduled meeting with your Field Case Manager, Cindy Carr. It is also my understanding that Cindy has attempted to schedule these meetings to be convenient to your school schedule. It is also my understanding that this is not the first appointment that you have not kept. It is your responsibility to maintain contact with your Field Case Manager and to keep your meetings with her.

As part of your voluntary participation in vocational rehabilitation services through the Bureau of Worker Compensation, you have agreed in writing to attend scheduled meetings. This includes all meetings with your Field Case Manager. The Field Case Manager is responsible to submit monthly updates on your progress to the BWC and your Managed Care Organization to verify that you are participating according to the written rehabilitation plan on which your current Living Maintenance Compensation is based.

If you do not keep these meetings, your Living Maintenance compensation can and will be suspended.

{¶ 20} 9. The seventh amendment to the second VRP was signed in March 2005. The following vocational rehabilitation services were proposed:

Proposed Case Management for 12 weeks will allow this CM to follow Mr. Vizzo's progress in his long-term training to ensure he is meeting the requirements necessary to receive assistance from the BVR. Tony will be attending OUL from 3/28/05 to 6/11/06, attending full time. LM is included in this plan for this period.

Tony has not yet received his official grades for this past semester, but reported to this CM on 3/18/05 that he expects to get two A's and is unsure of his math grade but believes he passed the course. He will participate in an unpaid internship for the first week of this plan with a minimum of three days of activity. This internship will enable him to begin using his media technology skills he has learned to date.

{¶ 21} 10. On February 24, 2005, relator missed a scheduled appointment with his case manager, and it was determined that his file would be closed.

{¶ 22} 11. In the April 24, 2005 closure report, relator's case manager indicated:

This CM traveled to meet with Tony on 4/22/05 as scheduled for our 10 a.m. appointment at McDonalds, Lancaster. A call was placed at 10:20 a.m. to Tony's home number when he had not arrived by this time. A message was

left for him that he did not show for his appointment and that he should contact this CM. Tony left a voicemail message for this CM after 1 p.m. on this date, stating he forgot about the appointment. This CM left a voicemail message for Shelly, MCO, with the missed appointment information and staffed the issue with Kimberly, DMC, as well. Kim advised this CM that she sent a letter to Mr. Vizzo after his last missed appointment in February advising him that if he did not show for future appointments his referral may be closed. It was further discussed that Mr. Vizzo has signed two participation agreements regarding his continued non-compliance with appointments and that his living maintenance is based on his case management participation. It was determined that Mr. Vizzo's referral should be closed for non-compliance. The closure information was given to Tina at the AOR on this date and an email was sent to the BWC/MCO.

An email was received from Tony on 4/22/04 [sic]. He again apologized for his not showing up for our scheduled meeting and explained that he has had problems with the brakes on his car and his daughter had surgery. This CM emailed Mr. Vizzo on 4/24/05 and explained that the BWC/MCO have recommended closure of his referral due to his continued non-compliance and further explained that it was not due to this one missed appointment but due to the long-term non-compliance.

{¶ 23} 12. In a letter dated April 24, 2005, relator was informed that his rehabilitation case was closed effective April 24, 2005. The letter also informed relator of his right to appeal.

{¶ 24} 13. Relator appealed from the closure of his rehabilitation case; however, the closure was affirmed by an alternative dispute specialist on August 18, 2005.

{¶ 25} 14. Relator appealed from the determination of the alternative dispute specialist; however, in a letter dated September 13, 2005, the administrator for the BWC upheld the decision to close relator's rehabilitation file.

{¶ 26} 15. Relator's further appeal was heard before a district hearing officer ("DHO") on December 8, 2005. The DHO vacated the order of the administrator as follows:

District Hearing Officer finds that the closure of injured worker's vocational rehabilitation on 04/22/2005 was improper and therefore shall be re-opened. District Hearing Officer further finds that the injured worker has complied with the requirements for eligibility in vocational rehabilitation. The injured worker has continued to attend the Ohio University earning credits toward a degree in Elective Media since March 2004. Even after the vocational rehabilitation closure on 04/22/2005, injured worker continued his course work through

the Spring quarter, then took some part time jobs in the Summer, and completed the Autumn quarter, 2005. He is currently enrolled for Winter quarter 2006. To his credit, the injured worker continued this college program even after vocational rehabilitation was closed.

While the injured worker may have missed three appointments with his rehabilitation coordinator from October, 2004 through April, 2005, District Hearing Officer notes that he followed up after missing the appointments and had legitimate and unforeseen circumstances for missing these appointments. Therefore, the vocational rehabilitation closure on 04/22/2005 was improper, and as such, injured worker's vocational rehabilitation shall be re-opened.

{¶ 27} 16. The DHO's order was not appealed.

{¶ 28} 17. In January 2006, amendment eight to relator's second VRP was prepared. The following vocational rehabilitation services were proposed:

Proposed Case Management for 9 weeks will allow this CM to follow Mr. Vizzo's progress in his long-term training to ensure he is meeting the requirements necessary to receive assistance from the BVR. Tony will be attending OUL from 1/03/06 to 3/18/06, attending full time. Mr. Vizzo is expected to graduate 11/22[/]06. LM is included in this plan for this period.

This case was re-opened through a level 2 ADR appeal process. The closure was rescinded by BWC on 4/22/05 and was assigned for voc rehab on 12/19/05. The case was re-assigned to this case manager on 12/30/05.

{¶ 29} 18. On February 13, 2006, relator filed a motion with the commission seeking the payment of living maintenance compensation from April 22, 2005 (the date his rehabilitation file had been closed following his missed appointment) through January 15, 2006.

{¶ 30} 19. Relator's motion was heard before a DHO on March 23, 2006 and was granted as follows:

The District Hearing Officer is relying upon the previous District Hearing Officer order of 12/08/2005, wherein the injured worker's rehabilitation plan was ordered reopened. The District Hearing Officer specifically found in that order that the injured worker's plan had been improperly closed. The District Hearing Officer also noted and claimant's counsel reiterated in the present hearing, that in spite of that closure, the injured worker continued his education toward his degree in electronic media technology. The District Hearing Officer finds this to be sufficient evidence to resume payment of living maintenance as of 04/22/2005. The District Hearing Officer finds *but for the improper closure of the injured worker's rehabilitation plan by Bureau of Workers' Compensation there would have likely been an ongoing plan in place. To his credit, the injured worker did continue his education and the District*

*Hearing Officer finds that he should not be penalized for an error on the part of the Bureau of Workers' Compensation.*

(Emphasis added.)

{¶ 31} 20. The BWC appealed, arguing that living-maintenance compensation cannot be paid for a period of time during which relator was not enrolled in a vocational-rehabilitation program and, further, that living-maintenance compensation cannot be paid for an aggregate period in excess of six months.

{¶ 32} 21. The BWC's appeal was heard before a staff hearing officer ("SHO") on May 3, 2006. The SHO vacated the prior order and granted relator's request in part. Specifically, the SHO found that living-maintenance compensation

[i]s authorized from the date last paid up through 06/11/2005 per the prior authorized rehabilitation plan in file (i.e. Amendment 7). Then, Living Maintenance is to again resume on 01/16/2006 when the Bureau of Workers' Compensation again authorized a new rehabilitation plan at that time. The Staff Hearing Officer finds that claimant is not eligible to receive Living Maintenance for the interim period (i.e. 06/12/2005 through 01/15/2006) for the reason that he was not in an authorized rehabilitation plan during that period.

{¶ 33} 22. Thereafter, in an order mailed May 8, 2006, the BWC determined that relator had been overpaid living-maintenance compensation in the amount of $10,585.29.

{¶ 34} 23. Relator's appeal was refused by an order of the commission mailed May 31, 2006.

{¶ 35} 24. Relator later filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 36} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide that relief. *State ex rel. Pressley v. Indus. Comm.* (1967), 11 Ohio St.2d 141[, 40 O.O.2d 141, 228 N.E.2d 631]. A clear legal right to a writ of mandamus exists when the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.* (1986), 26 Ohio St.3d 76[, 26 OBR 66, 497 N.E.2d 70]. On the other hand, when the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.* (1987), 29 Ohio St.3d 56[, 29 OBR 438, 505 N.E.2d 962]. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.

*State ex rel. Teece v. Indus. Comm.* (1981), 68 Ohio St.2d 165[, 22 O.O.3d 400, 429 N.E.2d 433].

{¶ 37} For the reasons that follow, it is this magistrate's conclusion that this court should grant relator's request for a writ of mandamus.

{¶ 38} R.C. 4121.63 provides for the payment of living-maintenance compensation as follows:

Claimants who the administrator of workers' compensation determines could probably be rehabilitated to achieve the goals established by section 4121.61 of the Revised Code and who agree to undergo rehabilitation shall be paid living maintenance payments for a period or periods which do not exceed six months in the aggregate, unless review by the administrator or the administrator's designee reveals that the claimant will be benefited by an extension of such payments.

Living maintenance payments shall be paid in weekly amounts, not to exceed the amount the claimant would receive if the claimant were being compensated for temporary total disability, but not less than fifty per cent of the current state average weekly wage. Living maintenance payments shall commence at the time the claimant begins to participate in an approved rehabilitation program.

{¶ 39} Ohio Adm.Code 4123–18–04 provides for the payment of rehabilitation services and states:

An injured worker is eligible for living maintenance payments in accordance with the guidelines of this rule.

(A) Living maintenance payments shall begin at the time that the injured worker actually begins to participate in a vocational rehabilitation plan.

\* \* \*

(B) The bureau shall order suspension of living maintenance payments at such time as it becomes evident that the injured worker will not be able to participate actively in his/her vocational rehabilitation plan for a period of thirty days or more due to the medical instability of the injured worker.

\* \* \*

(C) The bureau shall order termination of living maintenance payments at such time as:

\* \* \*

(2) The injured worker has failed to fulfill the responsibilities outlined in the vocational rehabilitation plan.

\* \* \*

(E) Living maintenance payments shall not be ordered by the bureau for a period or periods exceeding six months in the aggregate, unless review by the bureau reveals that the injured worker will be benefited by an extension of vocational rehabilitation services.

{¶ 40} Ohio Adm.Code 4123–18–05 provides for individualized written vocational-rehabilitation plans and, specifically, provides:

(A) When surplus funds are used, the MCO shall oversee that a vocational case management provider contacts the injured worker and prepares an individualized written vocational rehabilitation plan for the injured worker's acknowledgement and approval.  * * *

  * * *

(C) The MCO shall administer the development of the vocational rehabilitation plan, monitor the injured worker's progress and where circumstances warrant, direct the amendment or modification of the plan.

(D) The bureau shall determine if living maintenance payments are appropriate and shall monitor all other surplus fund expenditures.

{¶ 41} In this mandamus action, relator argues that inasmuch as the commission determined that the closure of his vocational-rehabilitation file on April 22, 2005, was improper and the commission ordered that his case be reopened, and because he continued to pursue his education and part-time work as outlined in the VRP after his file was closed, living-maintenance compensation should be paid.

{¶ 42} In contrast, the commission argues that relator was not currently enrolled in a VRP after amendment seven to his second VRP ended in June 2005. According to the commission, relator's continued attendance at Ohio University and the jobs he obtained in the interim were not performed under a VRP and, therefore, living-maintenance compensation is not payable until January 16, 2006, when the eighth amendment to his second VRP was approved.

{¶ 43} It is undisputed that the workers' compensation act is to be liberally construed in favor of injured workers.  Further, the goal of vocational rehabilitation is to help injured workers return to the workforce.  In the present case, the commission closed relator's vocational-rehabilitation file because he missed his third appointment in a one-year period of time.  There is no allegation that relator failed to fulfill every other obligation under both VRPs. In fact, there are several notations in the amendments to the second VRP indicating that relator had been putting forth a good-faith effort and that he was making great strides in his efforts to complete his schooling and find work.  Even after his vocational-rehabilitation file was closed, relator continued his education and continued to find work.  Further, based on the stipulated evidence submitted

before the court, there is no indication that his tuition was paid for after April 2005. Therefore, it appears that relator paid his own tuition through fall quarter 2005. Relator managed to do so in spite of the fact that he was not receiving any living-maintenance compensation.

{¶ 44} As indicated in the findings of fact, there were two VRPs drawn up for relator. The first VRP began in October 2002 and was amended 15 times. Relator's file was closed in December 2003, when he was unable to continue participation.

{¶ 45} The second VRP began in March 2007, and there were seven amendments before his file was closed. After the DHO concluded that the closure of his file was improper, amendment eight to the second VRP was prepared. Amendment eight picked up where amendment seven left off in terms of relator's goals and responsibilities. Relator continued to be responsible for attending classes at Ohio University, maintaining a 2.00 grade-point average (in fact, relator maintained a 3.00 grade-point average), and seeking work. Nothing had changed. As the DHO noted in the March 27, 2006 order, but for the BWC's improper closure of his vocational rehabilitation file, relator continued to perform the very same tasks he would have been required to pursue.

{¶ 46} In reviewing both VRPs and their amendments, the magistrate understands the commission's argument that each amendment was, in a manner of speaking, a separate plan because each amendment covered a specific time period. As such, the commission argues that amendment seven expired on June 10, 2005, and amendment eight did not begin until January 16, 2006.

{¶ 47} As stated previously, workers' compensation laws are to be liberally construed in favor of claimants. The commission's interpretation here may be technically correct; however, the magistrate finds that it should not be followed. With the exception of missing three appointments in a one-year period of time, relator fulfilled every other obligation under both VRPs. Even after his file was closed, relator continued to fulfill every obligation under the second VRP—he attended school, maintained above a 3.00 grade-point average, and secured employment. Given this fact pattern, the magistrate finds that the commission abused its discretion by denying relator living-maintenance compensation for this time period on grounds that there was no VRP in place.

{¶ 48} The commission argues further that living-maintenance compensation cannot be paid for a period in excess of six months. In the present case, relator is requesting living-maintenance compensation from June 12, 2005, through January 15, 2006, a period of seven months. R.C. 4121.63 provides that living-maintenance payments shall be made for a period or periods that do not exceed six months in the aggregate, unless review by the administrator reveals

that the claimant will be benefited by an extension of those payments. In the present case, relator is seeking the payment of living-maintenance compensation for seven months. That payment would require the commission to pay living-maintenance compensation for one month beyond the six-month aggregate. Given relator's fulfillment of the major obligations of the second VRP, the magistrate finds that relator would be benefited by the extension of those payments and that it would be an abuse of discretion to refuse to pay relator for this seven-month period.

{¶ 49} Based on the foregoing, it is this magistrate's conclusion that relator has demonstrated that the commission abused its discretion by failing to pay him living-maintenance compensation from June 12, 2005, through January 15, 2006, and the commission should vacate this order and enter a new order granting relator the requested compensation.

STEPHANIE BISCA BROOKS,
MAGISTRATE